347 P.2d 865

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Fay WARD, Jr., Defendant and Appellant.**

**No. 9134.**

Supreme Court of Utah.

Dec. 22, 1959.

L. G. Bingham, Ogden, for appellant.

Walter L. Budge, Atty. Gen., Richard R. Boyle, Asst. Atty. Gen., for respondent.

CROCKETT, Chief Justice.

Fay Ward, Jr. appeals from a conviction by a jury of the crime of rape. He charges that the evidence is not sufficient to sustain the verdict and that prejudicial errors were committed in rulings on evidence.

The prosecutrix testified that in the early morning (near 5 a. m.) of October 11, 1958, she awoke to find a stranger, later identified as the defendant, in the doorway to her bedroom; that she had a chance to

see him clearly, both by a lighted match he held and by the bedroom light which she turned on; and that despite her vigorous and continued resistance he attacked her and forced an act of intercourse upon her. The evidence is that he left immediately afterward and she ran next door to the home of friends who called her husband who returned from work and promptly notified the police. Shortly thereafter, at the behest of the police, she was examined by her doctor. It was not until 50 days later that the defendant, having been taken into custody, was identified by the prosecutrix as related below.

In probing for weaknesses in the case against him the defendant assails various aspects of it, the principal one being his identification. He stresses the limited opportunity the prosecutrix had to see her assailant; the length of time after the crime that she saw and identified him at the police station; and that she did so when he was alone and before she viewed him in a lineup.

The attack upon the manner of identification is not entirely without merit. Recognizing one accused of crime in a lineup is undoubtedly a more trustworthy method of being sure of identification than viewing the man alone. We are indeed at a loss to see any purpose in putting the defendant in a lineup after the prosecutrix had identified him. However, there is a plausible explanation of what occurred: that while she was waiting in the police station she saw the defendant at some distance and recognized him without being informed who the man was or what he was there for. While identification from a lineup may have been preferable, it is not by any means the only way it can be done. There is no reason why the jury could not have regarded such a spontaneous recognition as trustworthy.

One assignment of error relating to the admission of evidence also relates to the question of identification: the prosecutor was permitted to ask what the defense characterizes as a leading question. In examining the prosecutrix he elicited from her a description of her assailant, but she failed to mention his eyes as she had done at the preliminary hearing, whereupon the following occurred:

"Mr. Newey: Did you notice anything about his eyes at this particular time?

"Mr. Bingham: Your Honor, I'll object. I believe that it's leading.

"The Court: * * * I'm going to permit the answer * * *

"A. Yes, I do remember his eyes. They were kind of—I don't really know how to describe it—just starey eyed. They would kind of glare at you."

■■ We do not think this question should be characterized as leading. The vice in a leading question is that it in effect puts words in the witness's mouth so the testimony is really that of the questioner and not the witness. This usually occurs in so framing a question that it assumes a fact to be true, or in reciting a fact and merely seeking affirmation from the witness, or in so phrasing the question as to suggest the desired answer.[1] However, to simply direct the attention of the witness to a subject or some phase thereof, as was done here, does not render the question objectionable as leading. It is not only proper, but desirable to do so in order to confine the testimony to matters material to the issues and avoid the difficulty of turning a witness loose to ramble in the hope that he will touch upon the pertinent matter.

■ This further may be said: even if it should be assumed that the question under discussion was leading or suggestive of the desired answer, as the defendant contends, it is well settled that the trial judge should be allowed considerable latitude of discretion as to the extent counsel may lead or suggest to a witness. Generally, due to his advantaged position, he can and will sense whether the testimony being elicited is that of the witness or is merely an echo of counsel's ideas. Permitting such a question would not be prejudicial error upon which to predicate a reversal unless it appeared that the court had abused its discretion in allowing examination from which it could reasonably be assumed that the question provided the answer on a material issue adverse to the defendant's interest.[2]

■ The most substantial aspect of defendant's attack upon the judgment concerns allowing the prosecutrix's doctor to give his opinion in regard to her having been subjected to a forcible sexual assault. On that subject he was asked:

"Mr. Newey: Q. Do you have such an opinion, Doctor?

A. I do.

"Q. Would you please state what your opinion is?

"A. Well, I was convinced that she had been abnormally assaulted, as far as sex relations were concerned. And that without doubt there was no cooperation on her part."

Defendant claims several weaknesses in this testimony: that there was no sufficient foundation to justify admitting the conclusion stated; that there was no showing of physical injury to base it upon;

1. See 58 Am.Jur. 317, Witnesses, Section 570; State v. Scott, 20 Wash.2d 696, 149 P.2d 152.

2. 44 Am.Jur. 979, Rape, Section 116.

and that it was founded in part upon the declarations of the prosecutrix.

The record on this subject isn't as clear as might be desired, but this can be said: the substance of the testimony sought from the doctor, and which the trial court ruled admissible, was whether, from his examination, he had an opinion as to her having been forcibly assaulted sexually. The doctor admitted that there were no extensive physical indications such as open lacerations or bleeding, but said that he did find some "exudate" in the tissues, reddening thereof and abrasions; and that it was upon this basis and the explanation made by the prosecutrix that he concluded that there had been a forcible attack.

It is an entirely natural procedure for the doctor to ask questions and for the patient to explain concerning symptoms and injuries for the purpose of assisting the doctor in diagnosis and prescribing any needed treatment or medication, which was in fact prescribed here. It is hardly to be expected that a patient would go to a doctor and stand mute, defying him to find out what was wrong. And the fact that his diagnosis was based in part upon the patient's explanations would not render entirely incompetent his testimony as to the determination he made.[3]

Regarding the lack of severe physical injury, it is not necessary to show that a woman was butchered or brutally beaten to corroborate her testimony of resistance to such an attack.[4] Upon the basis of the record here we cannot say that the doctor was in error in concluding that he found sufficient indications upon which to base an opinion that an abnormal assault had occurred. He gave his opinion, but also admitted that her physical condition may conceivably have been caused in some other way. The jury thus had the benefit of his admission as to such possibility and an opportunity to weigh it against the opinion he had expressed and the grounds upon which he based it. Under these circumstances, where it appeared to the trial court that there was a reasonable foundation for the opinion of the expert witness, it was within its discretion to admit it and to allow any frailties therein to be exposed by cross-examination. In considering whether such testimony was prejudicial error, it is necessary to weigh not only the opinion itself but the extent to which any existing weaknesses therein were so exposed to the jury. The faults in it, assailed by the defendant, go to its weight rather than to its competency.

The concluding part of the doctor's answer, "And that without doubt there was

---

3. People v. Wilson, 25 Cal.2d 341, 153 P. 2d 720.

4. State v. Roberts, 91 Utah 117, 63 P.2d 584; State v. McCune, 16 Utah 170, 51 P. 818.

no cooperation on her part" may be properly subject to criticism. This was a gratuitous addition by the doctor on an aspect of the subject which it was obvious to the jury that he could not be sure. However, there was no motion to strike the same.

A further observation is pertinent to the testimony of the doctor: in view of the defendant's claim that he was not at the scene, there is really no vital issue here as to the use of force and the resistance thereto. It is, of course, incumbent upon the state to prove resistance which was overcome by force as one of the elements of the crime. But where the critical aspect of the defense does not relate to that issue, testimony of the character under discussion is not so important as otherwise. Based upon the foregoing considerations, it is our opinion that the admission of the doctor's testimony could not be regarded as prejudicial to the extent of justifying a reversal of the conviction.

In regard to the general charge that the evidence does not support the verdict: the defendant argues that the conviction should be scrutinized with great care because it is a charge easy to make and hard to defend against; particularly so here because important parts of the state's case rest entirely upon the testimony of the prosecutrix. With that general proposition we are in accord. But it also should be kept in mind that this offense is rarely committed in the presence of witnesses and often the conviction of the guilty could only be had upon the victim's testimony. It has often been held that if there is nothing inherently contradictory or incredible in her story a conviction may rest upon the victim's testimony alone.[5]

There is nothing incredible or suspicious in the prosecutrix's story. On the other hand, it would seem somewhat strange for this married woman, with her three young children asleep in the house, at that early hour to run to the next door neighbors in a condition of fright, complaining of such an attack, if it had not happened. The fact that she did so and had her husband and the police notified immediately seems to support her testimony of the forcible assault.

The rules governing the scope of review on appeal as to the sufficiency of the evidence to sustain the verdict are well settled: that it is the prerogative of the jury to judge the credibility of the witnesses and to determine the facts; that the evidence will be reviewed in the light most favorable to the verdict; and that if when so viewed it appears that the jury acting fairly and reasonably could find the defendant guilty beyond a reasonable doubt,

5. People v. Greer, 30 Cal.2d 589, 184 P. 2d 512.

40

the verdict will not be disturbed.[6] The evidence here is well within the ambit of those rules.

Judgment affirmed.

WADE, McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, J., concurs in the result.

6. State v. Sullivan, 6 Utah 2d 110, 307 P.2d 212; State v. Shonka, 3 Utah 2d 124, 279 P.2d 711.