498 P.2d 357

**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**Ronald G. WILCOX, Defendant and Appellant.**

**No. 12798.**

Supreme Court of Utah.

June 13, 1972.

I. Gordon Huggins, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., David S. Young and Larry V. Lunt, Asst. Attys. Gen., Salt Lake City, for respondent.

CROCKETT, Justice:

Defendant Ronald G. Wilcox was charged in separate counts with embezzling checks of $2,757.72, and $52.90, from the Cardiopulmonary Care Clinic, Inc., an Idaho corporation, of which he was the president and managing officer. From a jury verdict finding him guilty on both counts, he appeals contending: (1) insufficiency of evidence to sustain the verdicts; and (2) error in refusing to give a requested instruction.

In February of 1970, defendant established a corporation, Cardiopulmonary Care Clinic, Inc. (herein Corporation) in Idaho. The Corporation later qualified to do business in Utah and operations were set up in Ogden. Defendant appears to

have operated the business almost wholly by himself. Notwithstanding the fact that he had been involved in other business ventures, and thus had had the opportunity to learn the necessity of importance of accurate and adequate accounting practices, the financial and accounting aspects of the business were very loosely handled. The only records were the checkbook and check register, kept by the defendant. He required the cosigner, the secretary-treasurer, to sign blank checks in advance. There is evidence to the effect that he permitted the use of his personal credit cards for corporate purposes, and on occasion made personal loans to it. It also shows that due to the irregular manner of handling the corporate business it was difficult to ferret out the facts as to just what was happening in the business. It was an attempt to do so and establish proper accounting practices by C. P. A. Keith E. Wiggins that led to these charges of embezzlement.

The larger check of $2,757.72 was drawn on June 1, 1970, and was used to pay off the indebtedness on defendant's personal car. The only accounting indication of this transaction was the notation "loan payment" on the check stub. However, it is noteworthy, as will be seen below, that Mr. Wiggins testified that the bank statement did show a deposit of $2,331 in the corporation account on that date. But there was nothing to tie the two entries together. His inquiry of the defendant first brought the explanation that the deposit was a loan from Medical Leasing & Distributing Co. (a sole proprietorship owned by the defendant), but he did not say whether the "loan payment" related to personal or to corporate purposes. At the trial of this case defendant's contention was that the $2,331 was in part a repayment of the $2,757.72, and the difference of $426.72 was to be charged against wages he claimed to be owing him.

The check for $52.90 was one given August 3, 1970, to an insurance company to pay defendant's personal life insurance premium. It was again simply drawn on the corporation with no indication in the latter's records as to its purpose. .

Sec. 76–17–2, U.C.A.1953, under which defendant was convicted, states:

> Every officer . . . of any . . . corporation . . . who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control . . . with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.

Defendant's complaint about the court's instructions is that it failed to include its requested instruction that:

> . . . fraudulent [as used in that statute] has some other than its usual meaning. It implies deceit, deception,

artifice *and* trickery and means conversions made with intent to deprive beneficiary of the money permanently. It is not sufficient to show that the accused may have used poor judgment in his method of accounting.

■ In reference to defendant's claim that this request should have been given, the correctness of certain propositions relating to his defense is acknowledged: that the crime of embezzlement is not made out by showing a mere temporary detention of money belonging to another;[1] nor under circumstances where it is shown that the accused has some reasonable grounds for believing, and does in good faith believe, that he has a right to the money or property;[2] and that the offense of embezzlement is made out only when a person who has been entrusted with the possession of money or property of another, acts in violation of that trust, and with intent to deprive the owner thereof, takes it for his own use.[3]

In submitting to the jury the question of the violation of Sec. 76-17-2 quoted above the court's instructions included:

The statute is intended to punish those who fraudulently misuse corporation funds to their own advantage and is not intended to punish those who are mistaken regardless of the reasonableness of their mistake. . . .

\* \* \* \* \* \*

. . . before you can bring in a verdict of guilty, you must find that he had a fraudulent intent to deprive [the corporation] of this money, and if you believe that at the time he cashed the said check he was intending to make a deposit of $2,332.71 to the account of the Cardiopulmonary Care Clinics, Inc. and charge the remaining sum off as against unpaid salary, and was acting in good faith and without a fraudulent intent to deprive the company of the money then you must bring in a verdict of not guilty.

■ We see no cause for apprehension that this instruction does not cover the aspect of the case referred to in defendant's requested instruction in a fair and adequate manner. The term "fraud" or "fraudulently" as used in the statute, and in the instruction, has a meaning of such common knowledge and usage, as indicating a deceitful and wrongful taking to one's self the money or property of another, that jurors of ordinary intelligence would not fail to understand that meaning. Where the term is of common knowledge and usage it is both unnecessary and inadvisable to make the instructions more prolix and complicat-

---

1. State v. Hanna, 224 Or. 588, 356 P.2d 1046 (1960); State v. Monk, 193 Or. 450, 238 P.2d 1110 (1951), . . .

2. Ridge v. State, 192 Ind. 639, 137 N.E. 758 (1923).

3. State v. Pratt, 114 Kan. 660, 220 P. 505 (1923).

ed by the use of synonyms which add little or nothing to make a term easier to understand than the term itself.[4]

■ On this point it is further to be said that the defendant's request is not entirely correct. It states that "fraudulently" as applied to embezzlement proscribed by the statute implies "deceit, deception, artifice *and* trickery" in the conjunctive. This is in error in that technically it would require that they all be present. Further, it could be understood as implying that if the defendant had an intention of returning the money in the future he should not be found guilty. Neither is this a strictly accurate statement of the law. If one wrongfully appropriates and converts to his own use money or property belonging to another under circumstances which constitute embezzlement, it is not made otherwise because the one doing so might have some intention of restoring the loss sometime.[5] And it is true, a fortiori, that such an act is not prevented from being embezzlement merely because the defendant says that he had such an intention.[6] From what has been said above it is our conclusion that the trial court was entirely justified in refusing to give the requested in-

struction: first, because the subject was adequately covered; and second, because he is not obliged to give a requested instruction unless it accurately states the law.

■ In regard to the claim of insufficiency of the evidence: The point of significance is that the defendant's argument rests primarily on aspects of the evidence based on his own testimony. The evidence is uncertain as to the validity of his claim of $3,000 in back wages, as to the purposes for which he states he drew the checks in question; and as to his later explanations thereof. These are all part of the total circumstances from which it was the prerogative of the jury to judge the credibility of the evidence and to determine his guilt or innocence. The traditional rule of review requires us to assume that the jury believed those aspects of the evidence which support their verdict. In doing so it appears that there is a reasonable basis therein from which they could believe beyond a reasonable doubt that the defendant was guilty of the offenses charged, and we see no reason to disturb the judgment.[7]

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ.

---

4. For various definitions of fraud see 37 C.J.S. 204, 37 Am.Jur.2d p. 17, et seq.

5. See footnote 3.

6. That jury is not necessarily obliged to believe testimony in one's self-interest

see Fox v. Allstate Ins. Co., 22 Utah 2d 383, 453 P.2d 701.

7. See Sec. 77–42–1, U.C.A.1953; State v. Siddoway, 61 Utah 189, 211 P. 968; State v. Sinclair, 15 Utah 2d 162, 389 P.2d 465 (1964).