**The STATE of Utah, Plaintiff and Respondent,**

v.

**Mark Allen SCHOENFELD, Defendant and Appellant.**

**No. 13995.**

Supreme Court of Utah.

Jan. 14, 1976.

8. See *Redevelopment Agency of Salt Lake City v. Barrutia*, 526 P.2d 47 (Utah 1974); *State v. Peterson*, 121 Utah 229, 240 P.2d 504.

Sumner J. Hatch of Hatch, McRae & Richardson, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Mark Allen Schoenfeld was found guilty by a jury of negligent homicide,[1] a class A misdemeanor, for the shooting death of James Ivan Versluis outside the Canyon Inn at the mouth of Big Cottonwood Canyon, southeast of Salt Lake City, on the night of July 29, 1974.

In attacking his conviction he contends: (1) that the evidence was not sufficient to justify the verdict; and (2) error in instructions to the jury.

On the afternoon of July 28, 1974, two separate organizations:[2] The Ferrells Softball Team; and the patrons of a Salt Lake City bar: The Sequined Lady, each with their families and friends had arranged picnics at The Spruces Campground in Big Cottonwood Canyon. Defendant Schoenfeld and his friend, Brad Lee Austin, attended as part of the latter group.

At the respective parties it appears that there was a great deal of drinking of beer; and as normal social restraints and inhibitions lowered, arguments and eventually

---

1. 76-5-206. Negligent homicide.—(1) Criminal homicide constitutes negligent homicide if the actor, acting with criminal negligence, causes the death of another. (2) Negligent homicide is a class A misdemeanor.

2. We review the evidence, and the inferences which may be reasonably drawn therefrom, in a manner which will support the jury verdict; see *State v. Wilcox*, 28 Utah 2d 71, 498 P.2d 357; *State v. Ward*, 10 Utah 2d 34, 347 P.2d 865.

some fist fights broke out. Defendant's pal, Austin, was involved in two such fights and afterwards was asked to leave. At about 9:30 p. m., he drove to town in his automobile and picked up another friend, Richard Lee Guthrie. They talked about the fights, drove to the apartment where Austin and defendant Schoenfeld lived. There they picked up the latter's .22 automatic pistol, then drove back to the Spruces Campground where they arrived just after 10:00 p. m.

Meanwhile, the parties had been breaking up and the people leaving. Defendant got a ride with a Marion D. Johnson down to the mouth of the canyon to the Canyon Inn where some of the Ferrells Softball Team had gone after the party. There the defendant engaged in arguing with Johnson and his friends, who asked the defendant to leave. He repeatedly refused, but finally about 11:30 p. m. he left and walked westward on 70th South and began hitchhiking for a ride to town. Half an hour later, his friends, Austin and Guthrie, picked him up. Defendant told them that he wanted to go back and fight Johnson because the latter had made some immoral proposal to him. Defendant took the pistol from Austin, tucked it under his belt and pulled his shirt over it; and the three went back to the Canyon Inn, arriving there shortly after midnight on July 29. Johnson was out in the parking lot and the defendant challenged him to a fight. Johnson accepted and the two started from the lot for a place to fight.

At the same time, Austin and Guthrie were exchanging insults and threats with several of Johnson's friends, which result-ed in more fighting. One of them knocked Guthrie to the ground and the deceased, Versluis, chased Austin from the lot. During this general melee, the defendant drew his gun. (He claims: merely to scare Johnson and see him "run".) Johnson shouted, "Look out, he's got a gun," and then fled. Versluis had returned from chasing Austin and, seeing the defendant with a gun, ran toward him swinging a belt. Defendant fired the gun (His claim: that this was only a warning shot and that he missed intentionally). As Versluis continued toward the defendant and made contact with him, defendant fired the gun twice; one bullet entered Versluis' chest and the other his abdomen. He collapsed and fell to the ground, dead.

The charge, as originally filed against the defendant, was second degree murder,[3] but after the preliminary hearing, it was reduced to manslaughter[4]; and the jury found him guilty of the included offense of negligent homicide.

■ In regard to defendant's contention that the evidence is not sufficient to justify his conviction, these observations are pertinent: The jury were not obligated to accept as true defendant's own version of the evidence nor his self-exculpating statements as to his intentions and his conduct. They were entitled to use their own judgment as to what evidence they would believe and to draw any reasonable inferences therefrom.

■ This includes the salient facts: that when the defendant armed himself with a loaded pistol and went back looking for a fight with Johnson, he knew he was

3. 76-5-203. Murder in the second degree.—(1) Criminal homicide constitutes murder in the second degree if, under circumstances not amounting to murder in the first degree or manslaughter, the actor: (a) Intentionally or knowingly causes the death of another; or (b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another.

4. 76-5-205. Manslaughter.—(1) Criminal homicide constitutes manslaughter if the actor: (a) Recklessly causes the death of another; or . . . (c) Causes the death of another under circumstances where the actor reasonably believes the circumstances provide a moral or legal justification or extenuation for his conduct, although the conduct is not legally justifiable or excusable under the existing circumstances.

going into a continuation of hostility with the other group. He drew the gun—made threats with it—fired it in the direction of Versluis—then shot him, not once, but twice. How anyone can argue in good conscience that this evidence does not provide sufficient basis to justify a conviction of negligent homicide strains one's credulity. It appears to us quite likely that if it had not been for the fact that Versluis was himself engaging in gross misbehavior and taking foolhardy chances in an obviously dangerous situation, the jury might well have found the defendant guilty of a higher offense and would have been justified in doing so.

The central aspect of defendant's case was that the killing was not intentional, but was accidental, and also that it was justifiable homicide as necessary self-defense. The court correctly stated to the jury that doctrine, and included in its instructions the following, of which the defendant complains:

> . . . Under our law a person is legally justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force used is necessary to prevent death or serious bodily injury to himself or to a third person.

> However, a person is not justified in using force under the circumstances set forth in the preceding paragraph if he either:

> (a) Initially provokes the use of force against himself with the intent to use force as an excuse to inflict bodily harm upon the assailant; or

> (b) Is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony and, under the law, it is a felony if one uses a deadly weapon in threatening to do bodily injury to another and accompanies that threat by a show of immediate force of violence; or

> \* \* \* \* \* \*

> An aggressor is one who willingly and knowingly initially provokes a combat or does acts of such a nature as would ordinarily lead to combat. A person can also be classified as an aggressor if he leaves the scene of a quarrel, arms himself, and then returns to the scene and renews the quarrel.

▪ The first difficulty defendant confronts in his attack upon the instructions is the absence of any proper challenge in the trial court. In taking his exceptions, his counsel made a general statement to the effect that the instruction did not correctly state the law.[5] But neither by submitting a written request, nor by his oral exception, did he state a clear and specific exception pointing out the difficulty and the remedy for what he now claims is a defect therein. Thus he should be precluded from now doing so.[6]

▪ Nevertheless, in regard to his contentions, we make further comments. First: the instruction is generally in accord with our law;[7] Second: we agree that the judge should not express to the jury any view as to the credibility of evidence.[8] But the defendant's averment

---

5. That such a general objection is not sufficient see *Employers' Mutual Liability Ins. Co. v. Allen Oil*, 123 Utah 253, 258 P.2d 445.

6. See Rule 51, U.R.C.P.; *Redevelopment Agency of Salt Lake City v. Barrutia*, 526 P.2d 47 (Utah 1974); *State v. Peterson*, 121 Utah 229, 240 P.2d 504; we so state in awareness that this court may nevertheless notice errors if it is convinced that an in-

justice has resulted, see *State v. Cobo*, 90 Utah 89, 60 P.2d 952, but that is not the situation here.

7. See Section 76-2-402, Utah Code Annotated 1953.

8. That defendant is entitled to jury trial see Art. I, Sec. 12, Const.; and that this means the jurors are exclusive triers of fact and that

that the instructions amounted to a comment on the evidence represents a distortion for the purpose of making that argument. The instructions are stated in abstract generality; and they do not purport to tell the jury either what the evidence is or what the facts are. On the other hand, in other instructions, the court carefully advised the jury that it was their exclusive prerogative to judge the evidence and to determine the facts.

■ Defendant makes the argument that paragraph (b) of the instruction just quoted is in error and prejudicial to him wherein it speaks of a felony; whereas under Section 76–10–506 his conduct could also be deemed a misdemeanor. This is to be said: It should be kept clearly in mind that this paragraph is stating the exception: that is, when "a person is *not* justified in using force." This telling the jury that a person in defendant's circumstances is deprived of that defense if he is attempting to commit a felony has the effect of saying that defendant would not be deprived of the defense unless his conduct was an offense of the higher order; i.e. a felony, but would leave him with the defense if his conduct were only a misdemeanor. Without further exposition thereon, it should be obvious that requiring the jury to find his conduct to be of the higher order before depriving him of self-defense could not have been prejudicial to the defendant under the circumstances.

There does not appear to be any error prejudicial to the defendant. His conviction is therefore affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

MAUGHAN, J., concurs in the result.

the judge should not comment on the evidence see Sec. 77–31–31, U.C.A.1953; *State v. James*, 32 Utah 152, 89 P. 460; see also

*Federated Milk Prod. Assn. v. Statewide Plumb. & Heat. Co.*, 11 Utah 2d 295, 358 P.2d 348.