STATE of Utah, Plaintiff and
Respondent,

v.

William Harrison CLAYTON,
Defendant and Appellant.

No. 17518.

Supreme Court of Utah.

May 6, 1982.

Shelton R. Carter, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The appellant/defendant appeals from a conviction of criminal homicide under the provisions of § 76–5–203(1)(b), U.C.A., 1977, which states:

> Murder in the second degree —(1) Criminal homicide constitutes murder in the second degree if the actor:
>
> *  *  *  *  *  *
>
> (b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another . . . .

The defendant was charged with the beating death of John Linde, a 91-year-old man living alone at the time of the crime. A neighbor found him badly injured and semiconscious on the evening of November 14, 1980. His home had been ransacked and splattered with blood. He died 25 days later while under professional care. The defendant was convicted on the basis of circumstantial evidence: a yellow baseball cap, found at the scene of the crime, was identified as having been seen on the defendant earlier on the day of the killing; hairs from the cap were analyzed and compared with hairs from the defendant; a witness testified that the defendant had left credit cards with the name "John Linde" at her home shortly after the crime was committed.

On appeal, the defendant complains that the trial court improperly instructed the jury on the weight to be given circumstantial evidence, specifically that the instruction given did not state that circumstantial evidence should be treated with "caution." The given instruction stated:

> Circumstantial evidence is competent, and is to be regarded by the jury in all cases. It should have its just and fair weight with you; you are not to fancy situations or circumstances which do not appear in the evidence but you are to make those just and reasonable inferences from the circumstances proven which the guarded judgment of a reasonable man would ordinarily make under like circumstances; and if in connection with the other evidence before you, you then have no reasonable doubt as to the defendant's guilt, you should convict him but if you then entertain such doubt, you should acquit him. To warrant a conviction on circumstantial evidence, each fact necessary to establish the guilt of the accused must be proven by competent evidence beyond a reasonable doubt and the facts and circumstances proven should not only be consistent with the guilt of the accused but must be inconsistent with any other reasonable hypothesis or conclusion than that of guilt.

The defendant cites no cases which require the use of particular words in instructing a jury regarding circumstantial evidence. The defendant apparently bases his contention on State v. Schad, 24 Utah 2d 255, 257, 470 P.2d 246, 247 (1970), which states that ". . . where a conviction is based on circumstantial evidence, the evidence should be looked upon with caution . . . ." However, this language appears in the context of a longer discussion regarding the sufficiency of evidence to sustain a verdict and is clearly not intended as a mandate for the exact wording of instructions. A survey of Utah cases indicates that the only

clear requirement for jury instructions regarding circumstantial evidence (or direct evidence) is for the jury to be instructed regarding the prosecution's burden of proof. This requirement may be met by using a "reasonable doubt" instruction or a "reasonable alternative hypothesis" instruction. *See, e.g., State v. Eagle,* Utah, 611 P.2d 1211 (1980); *State v. King,* Utah, 604 P.2d 923 (1979); *State v. John,* Utah, 586 P.2d 410 (1978); *State v. Schad, supra.* Even these instructions need not be given with any particular words or phrases. Rather, this Court has warned that care must be taken "... to use language which the jury would understand ...." *State v. Garcia,* 11 Utah 2d 67, 71, 355 P.2d 57, 60 (1960).

The record reveals no reason to suppose that the jury misunderstood or gave undue weight to the evidence by being instructed to view the circumstantial evidence with "the guarded judgment" of a reasonable man. The stock phrases and "magic words" beloved by lawyers carry no talismanic assurance of comprehension by jurors untrained in the law. The concept of care or caution in the consideration of circumstantial evidence was adequately conveyed by the instruction given.

■ The defendant also complains that the trial court erred in failing to give a separate "reasonable alternative hypothesis" instruction, in spite of the clear coverage of this point in the instruction quoted above. There was no need to repeat the same instruction twice. The overemphasis of a point may be as misleading to a jury as the omission of a point. In addition, the defendant alleges error in the court's rejection of his proposed jury instruction No. 1 which stated in part: "You are instructed that circumstantial evidence is necessarily less convincing and of less value than direct evidence." This is a misstatement of the law. In Utah, as elsewhere, circumstantial evidence alone may be competent to establish the guilt of the accused. 30 Am.Jur.2d *Evidence* §§ 1125, 1126 (1967). The decisions of the trial court regarding jury instructions are affirmed.

The defendant's second point on appeal alleges error in the trial court's admission of probability testimony regarding the matching of hair samples and claims that (a) there was a lack of foundation for the probability evidence, and (b) such probability evidence had a disproportionate and prejudicial impact on the jury. Specifically, the defendant objects to the expert witness' reference to "the studies of others" in assigning a statistical probability to the matching of two hair samples.

■ Rule 56(2)(b) of Utah R.Evid. provides that if the witness is an expert, the testimony is limited to "such opinions as the judge finds are ... within the scope of the special knowledge, skill, experience or training possessed by the witness." While this language does not exclude the testimony in question, it gives the trial court little guidance in the face of the traditional inclusion of "the studies of others" within the hearsay prohibition. The traditional rule has limited an expert's opinion testimony to personal experience and observation. Learned treatises, reports or observations of others could be admitted separately, but were subject to objection under the rationale that the original writer or observer could not be cross-examined. More recently, Fed.R.Evid. 703 has broadened the basis for an expert's testimony by specifying that facts or data used in forming an opinion or inference need not be admissible if of the type reasonably relied on by experts in the witness' field of expertise. This approach may be seen in other jurisdictions. In *Goodner v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 61 Wash.2d 12, 377 P.2d 231 (1962), the court ruled that there was no error in a doctor's reference to a medical publication for statistics because the opinion he gave was based upon his own knowledge and experience which included his knowledge of the pertinent statistics. The California Supreme Court ruled in *Brown v. Colm,* 11 Cal.3d 639, 114 Cal.Rptr. 128, 522 P.2d 688 (1974), that while a layman may not base an opinion on a medical text, it is proper for a professional physician to do so. The court cited Wigmore's reasoning that a professional has the expe-

rience necessary to evaluate the trustworthiness of the source and plausibility of the views expressed. The court stated:

> ... if the threshold test of general testimonial qualification is found to be met and the witness is permitted to testify on direct examination, he is subject to as penetrating a cross-examination as the ingenuity and intellect of opposing counsel can devise. This inquiry may challenge not only the knowledge of the witness on the specific subject at issue, but also the reasons for his opinion and his evaluation of any written material upon which he relied in preparation for this testimony. Further, a defendant is free to argue that the witness' testimony is not entitled to acceptance or credibility ... and defendant may produce his own witness in rebuttal. These measures are more than adequate to protect a defendant's interests.

114 Cal.Rptr. at 132, 522 P.2d at 692 (citations omitted). In *Reeves v. Markle,* 119 Ariz. 159, 579 P.2d 1382 (1978), the Arizona Supreme Court upheld an order for a new trial which had been granted because of the trial court's refusal to admit the testimony of the plaintiff's accident reconstruction expert. The testimony was considered inadmissible by the lower court because it was speculative and based in part on hearsay, that is, the studies of others which allowed the expert to interpret the data which he had collected. The Supreme Court ruled that the "speculative" aspect of the expert's testimony went to its weight rather than its admissibility and continued:

> If expert witnesses could not rely on information gained through their study of scientific literature because of its hearsay nature, then it would be virtually impossible for any expert to evaluate the facts presented in any lawsuit, because nearly everything a person has learned technically constitutes hearsay.

119 Ariz. at 162, 579 P.2d at 1385. In *Transcontinental Refrigeration Co. v. Figgins,* Mont., 585 P.2d 1301, 1306 (1978), the plaintiff objected to the defendant's expert's use of a reference book on the grounds that "anybody can pull out a trea-

tise and expound principles." The court ruled that the objections went to the weight to be accorded the testimony, rather than its admissibility.

■ It is necessary to consider whether a similar position in Utah would be in conflict with Utah law or the Utah Rules of Evidence. As discussed above, Utah R.Evid. 56(2)(b) gives the trial court broad discretion. Reports, current professional publications and treatises may be comfortably included within the "scope of the special knowledge" of a qualified expert. In addition, Utah R.Evid. 57 provides, as does Fed. R.Evid. 705, for preliminary examination or disclosure of underlying facts or data at the discretion of the court. Fed.R.Evid. 705, also specifies that the expert may, in any event, be required to disclose underlying data on cross-examination. In *State v. Ward,* 10 Utah 2d 34, 347 P.2d 865 (1959), this Court held that where it appeared to the trial court that there was a reasonable foundation for the opinion of the expert witness, it was within the discretion of the court to admit the opinion and allow any frailties therein to be exposed on cross-examination. "The faults in it ... go to its weight rather than to its competency." 10 Utah 2d at 38, 347 P.2d at 868.

■ The clear trend in the law of evidence is toward the position expressed in the Federal Rules with regard to the allowable bases for the testimony of experts. We find nothing to preclude the use of that standard in Utah. It is within the discretion of the trial court to determine the suitability of expert testimony in a case and the qualifications of the proposed expert. However, once the expert is qualified by the court, the witness may base his opinion on reports, writings or observations not in evidence which were made or compiled by others, so long as they are of a type reasonably relied upon by experts in that particular field. The opposing party may challenge the suitability or reliability of such materials on cross-examination, but such challenge goes to the weight to be given the testimony, not to its admissibility. It is

established law in Utah that the jury determines the weight and credibility to be given evidence. *Lamb v. Bangart,* Utah, 525 P.2d 602 (1974). The preparation of a challenge directed to the reliability of an expert's sources may be facilitated in appropriate cases by making use of Utah R.Civ.P. 26(b)(4) and Utah R.Crim.P. 16(a)(5) and (c) to obtain disclosure of the names of experts prior to trial.

In the instant case, the defendant stipulated to the qualifications of the expert witness. After a lengthy exploration of the methods and points of comparison used by the witness, the probability testimony based in part on "the studies of others" was given to aid the jury in evaluating the hair comparison made by the expert witness himself. *See Reeves, supra.* The witness, in his own testimony on direct examination, exposed the weakness in the assignment of probability figures when he said, "I find it very difficult to put a specific number on that." The defendant had ample opportunity to explore this weakness in cross-examination. The record shows that the defendant knew about the expert in advance of trial and could have challenged the testimony with his own materials or witnesses on the subject of the reliability of hair analysis and comparison. Such a challenge, however, would have been to the credibility, not the admissibility of the testimony.

It is clear from the record that the trial court did not abuse its discretion by qualifying as an expert a witness who had 12 years of personal experience in the area of inquiry. Neither did the trial court err in allowing the probability testimony when

the defendant had the opportunity to challenge its credibility.[1] *State v. Ward, supra.* In the absence of a showing of abuse, this Court will not reverse. *State v. Mason,* Utah, 530 P.2d 795 (1975).

Affirmed.

HALL, C. J., and OAKS and HOWE, JJ., concur.

STEWART, J., concurs in the result.

---

1. The appellant cites two cases to support the proposition that probability evidence is inherently prejudicial. In *United States v. Massey,* 594 F.2d 676 (8th Cir. 1979), the trial court elicited speculative statistics from the expert witness and the prosecutor applied these figures (regarding matching hair samples) directly to the probability of the defendant's guilt in his closing argument. Certainly, a trial court should control the use of figures offered in evidence to limit their application to the purpose for which they are offered. In *State v. Carlson,* Minn., 267 N.W.2d 170 (1978), the

court held the foundation for the expert's probability testimony proper but found error on the philosophical basis that such statistics tend to make "the uncertain seem all but proven" and that cross-examination may be insufficient to "dispel the psychological impact of the suggestion of mathematical precision." *Id.* at 176. This Court does not share that philosophy, having a higher opinion of a jury's ability to weigh the credibility of such figures when properly presented and challenged, and accord this type of testimony the weight it deserves.