THE STATE OF OHIO, APPELLEE, *v.* PARSONS, APPELLANT.

[Cite as State v. Parsons, 18 Ohio App. 2d 123.]

(No. 29073—Decided May 8, 1969.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mrs. Carol G. Emerling,* for appellant.

DAY, J. Appellant was indicted with one Neece for robbery. On the same day appellant was indicted alone on a second indictment for aggravated assault. He plead not guilty to both. Appellant elected to be tried by a jury. His codefendant in the robbery indictment opted for a bench trial. Nonetheless, the indictments were consolidated for trial over objection.[1] Appellant was found guilty on both. This court unanimously disapproves the consolidation as not consonant with good practice in criminal trials al-

---

[1] Appellant also moved unsuccessfully for a separate trial on the ground that a possible confession by the codefendant inculpating the defendant was of concern; see, *State* v. *Rosen* (1949), 151 Ohio St. 339. Such confession, if introduced, would be error incurable by instruction. *Bruton* v. *United States* (1968), 391 U. S. 123. Actually no confession was introduced. Appellant concedes in his brief that the evidence reflects only that codefendant Neece made a statement to the police after the required constitutional warnings. Under the circumstances, the error, if any, was not prejudicial.

though not amounting to error of prejudicial or constitutional dimension on the facts of this case.[*] The court is unanimous in all remaining particulars—in affirming the conviction on the indictment for aggravated assault and in finding that the remaining assignments of error, briefed and argued by the appellant, are without merit except for one portion of the third assignment of error. That claimed error stems from the failure to give a requested charge upon the lesser included offense of assault and battery.

The court holds that assignment well taken for reasons which appear below.

It is not and could not be contended, successfully, that assault and assault and battery are not included offenses in the crime of robbery. *Howard* v. *State* (1874), 25 Ohio St. 399, 401. And it is fundamental that the trial court must charge on any included offense the evidence will support. Section 2945.74, Revised Code; *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 80. For it is the evidence, as well as the formal charge, *Bandy* v. *State* (1921), 102 Ohio St. 384, 402, which determines whether an instruction on an included offense is required.

Once it is concluded that another offense can properly be deemed within a crime charged in an indictment, the crucial question becomes:

"* * * Was there *any* evidence submitted to the jury * * * from which any reasonable inference [of an included offense] * * * might be drawn or inferred?" *Bandy* v. *State, ibid.,* at 388. (Emphasis supplied.)

The *Bandy* court was concerned with offenses included in a charge of murder, one a different offense than that involved in the present case. However, the reach of the principle is clear. The pertinent conclusions are at pages 402-403 in the opinion:

"* * * where there is no evidence from which a rea-

---

[*]In addition to problems posed by codefendant confessions (see footnote 1), it is easy to imagine further complications in a consolidated trial. For example, suppose one defendant takes the stand and the other does not. Is the failure to testify subject to comment by the lawyer for the testifying codefendant?

sonable inference can be drawn of any other [lesser included offense] * * * it is not only not error for the court to refuse to charge upon such lesser * * * [included offense], but would be error for the court to so charge; * * *."

Stated affirmatively, the *Loudermill-Bandy* principle is that *any* evidence from which any reasonable inference may be drawn to support an included offense requires a charge covering that offense. *Loudermill* might be interpreted as going so far as requiring a charge on an included offense where there is *any* evidence before the jury even *tending* to support the instruction. (See footnote 3 *infra*.)

In the instant case, a request for a charge on the lesser included offenses of the crimes of robbery, assault, and assault and battery, was made. We conclude that the evidence of battery is so overwhelming as not to justify a charge on assault alone. However, that same record requires a charge on assault and battery. These conclusions are based on the testimony of the witness McKinny and codefendant Neece:

(Witness McKinny):

"Q. Now, as you had turned the light off and were opening the blinds, what, if anything, did you observe? A. Well, I saw Mr. Neece and Mr. Parsons. They were standing by a parked automobile. And I saw a woman which I knew as Mrs. Dora Sellards, she came out of the other saloon which is Sarada's and started toward, looking me right in the face, started toward my tavern.

"* * *

"Q. What did you observe? A. Well, I observed she came out of the tavern and started towards down Payne, towards Lubeck's.

"And I observed Parsons and Neece, they came up behind her and as she—I don't know what was said, but apparently it appeared to me that somebody said something to her and she started to turn around and I saw Parsons hit her.

"* * *

"Q. What happened after you observed Parsons hit

her? A. Well, after he knocked her to the basement (*sic*), he started kicking her.

"Q. Who started kicking her? A. Parsons.

"Q. All right. Then what did you observe, if anything? A. Oh, I observed them, the other guy grabbed the lady's purse up off the sidewalk and they started running south on 19th Street.

"That's when the policeman—and the next I saw the policeman was coming across the street after them, hollering at them to stop.

"* * *

"Q. Did the person that you knew as Parsons have anything in his hands? A. No. That I couldn't observe, sir.

"* * *

"Q. Are you positive that you observed the defendant Neece take the purse and run? A. He picked the purse up, yes, sir."

(Codefendant Neece):

"Q. Where is the Avalon? A. On 18th and Payne.

"Q. 18th and Payne. Why were you going to the Avalon? A. Well, because they had a band there and figured we'd go down and listen to the music, there'd be more people in there or something.

"Q. What side of the street is the Avalon Bar on? A. The same side as the Gold Key. It would be the south side.

"Q. Same side. What occurred after you left the— what, if anything, occurred after you left the Gold Key Bar? A. Well, we were walking from the Gold Key to the Avalon. We came to Sarada's Bar.

"Well, this woman, Dora Sellards, she walked out of the bar.

"Q. May I interrupt you for a moment?

"Had you known Dora Sellards? A. No. Well, she was coming out the door and as we walked by, she had bumped into Mr. Parsons. There were words exchanged which I couldn't distinguish and the next thing I know, Parsons pushed her down and he fell with her and I was telling

him, what are you doing, what are you doing? I'm trying to pull him off. Then, the next thing I know, the police were there.

"* * *

"Q. Doug, did you at any time intend to steal anyone's purse? A. Steal what?

"Q. Anyone's purse? A. No, I did not.

"* * *

"Q. And you can specifically remember that there were some words exchanged? A. Yes.

"* * *

"Q. Doug, I don't want you to assume anything. Did you see him push her? A. Pardon?

"Q. Did you see him push her? A. Yes.

"* * *

"Q. Doug, isn't it a fact that Charles Parsons hit Mrs. Sellards with his fist and knocked her to the pavement and then said to you, 'Get her purse'? A. No.

"Q. 'Because she carries money in that'? A. No, sir.

"* * *

"Q. Doug, you didn't plan to meet Charles Parsons in the Gold Key that night, did you? A. No."

The issue in the present case is not whether we agree or disagree with the jury verdict. Rather, it is whether the trial court was legally obliged, on the evidence, to charge in a way that provided the jury an option to do other than it did.

We hold the evidence did require this option only as to a charge on assault and battery under the indictment for robbery. To hold otherwise is to bar the jury from its function. It has not been permitted to "pass upon the credibility and weight of the evidence."[3]

---

[3]Cf. *State* v. *Loudermill*, 2 Ohio St. 2d 79, 82-83:

"We repeat with approval the last paragraph of the unanimous opinion of the Court of Appeals, by Judge Smith:

"'* * * The jury should not be denied its *right* to pass upon the *credibility* and *weight* of the evidence by failing to charge a lesser included offense where there is evidence *tending* to support a charge of a lesser included offense.'" (Emphasis added.)

This means that the evidence required a charge which would not compel the jury to find, but would allow it to consider whether, the defendant Parsons was guilty of the lesser included offense of assault and battery.

We reverse the conviction on the indictment of defendant, Parsons, for robbery and remand for new trial in accord with this opinion. In all other particulars the judgment of the court below is affirmed.

*Judgment accordingly.*

SILBERT, C. J., and CORRIGAN, J., concur.