THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DELANEY, Defendant-Appellant.

(No. 74-335;

Fifth District—April 24, 1975.

Hanagan, Dousman & Giamanco, of Mt. Vernon (Paul D. Giamanco, of counsel), for appellant.

Donald E. Irvin, State's Attorney, of Mt. Vernon (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, James Delaney, was convicted of rape after a jury trial in Jefferson County and sentenced to from 7 to 15 years. On appeal he alleges that he was not proved guilty beyond a reasonable doubt; that the trial court erred in not dismissing the indictment; and that the sentence imposed was excessive.

The evidence can be briefly summarized. On October 29, 1973, prosecutrix was working in the home of her employers, Mr. and Mrs. Ray Coultas. Defendant arrived at the home and asked for Mr. Coultas. Upon being told that he was at work, he stated that he would like to speak to him. Prosecutrix called Mr. Coultas and defendant spoke to him. Prosecutrix testified that after the phone conversation, defendant began to leave but instead closed and locked the front door. He pulled a knife, pressed it against her and forced her into the bedroom. She cried and begged him not to rape her. In the bedroom he forced her to remove her clothing and pushed her onto the bed where he had intercourse with her. Throughout the act he held the knife to her throat. After the act, defendant forced her to dress and warned her to remain silent. As he left the house he told her he would send her some money or flowers, to which she responded, "I will see you in Hell." Defendant left the house and prosecutrix immediately called Mr. and Mrs. Coultas. Mr. Coultas testified that she was crying and was hysterical. Prosecutrix informed them that she had been raped by the defendant. Mr. and Mrs. Coultas went to the house and took prosecutrix to the State's Attorney's office where she gave a statement about the incident. She was then taken to the hospital where she was examined by Dr. E. B. Epperson, who testified that upon examination he found the presence of live sperm and concluded that the prosecutrix had engaged in intercourse in the pre-

vious 3 hours. He found no injuries. Stanley Woods, an employee of Mr. Coultas at the time of the offense, testified that he was working in a shed about 150 feet from the Coultas home. Upon his arrival he saw defendant's truck in the driveway next to the house. Defendant subsequently drove to the shed and talked to Woods. Woods testified that defendant told him that he had been "playing around" with the prosecutrix. Although defendant did not elaborate, Woods believed that defendant had engaged in sexual intercourse with the prosecutrix.

Defendant testified and admitted having intercourse with prosecutrix. He said that while in the house she told him that she was on probation for prostitution. He propositioned her and a price was agreed upon. After intercourse, he refused to pay her and left. Defendant's theory was that her anger in not being paid for the act prompted the rape accusation. He denied having a knife or forcing prosecutrix to engage in intercourse. Prosecutrix denied ever having been a prostitute or having been arrested or convicted for prostitution. No evidence to refute prosecutrix's denial was presented. Stanley Woods stated that her reputation in the community was that she would "live with one [man] awhile and then live with another," though he stated that he had never had intercourse with her. Prosecutrix admitted that at the time of trial she lived with a man though she was not married at the time.

Defendant contends that the evidence failed to prove beyond a reasonable doubt that intercourse occurred by force and against the will of the prosecutrix. He notes several inconsistencies between her testimony at trial and preliminary hearing and the statement given to the State's Attorney after the incident. The discrepancies are minor. Prosecutrix testified that she was very upset after the offense. This was substantiated by Mr. Coultas, who accompanied her to the prosecutor's office. Dr. Epperson testified that he prescribed tranquilizers for prosecutrix without request by her because of her condition. That minor details in her account of the incident may have been stated incorrectly or out of sequence during this first brief interview does not negate the clear and convincing nature of her testimony. Her testimony that she was forced at knife point to engage in intercourse was unshaken. It was corroborated by her prompt complaint to third parties and appropriate law-enforcement authorities. Medical evidence established that intercourse had occurred, and Dr. Epperson confirmed her distraught condition.

■■ The theory of the case propounded by the defendant was presented to the jury. He was ably represented by counsel who challenged the State's evidence and attempted to impeach the State's witnesses. Defendant testified and presented his story to the jury. It is the province of the jury to judge the credibility of the witnesses and the weight their

testimony should receive. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631 (1972); *People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697 (1968); *People v. Williams*, 26 Ill.App.3d 381, 324 N.E.2d 707 (1975).) We find nothing in the record before us that raises any doubt of defendant's guilt.

Defendant next contends that the trial court erred in failing to dismiss the indictment. On October 29, 1973, a criminal complaint signed by the prosecutrix was filed charging defendant with rape in that he "did have sexual intercourse  *  *  *." On December 18, 1973, an indictment was filed which alleged that defendant "did have sexual relations  *  *  *." The indictment was signed by Cliff Campbell as foreman of the grand jury. On January 4, 1974, defendant was arraigned. The cause was set for trial April 17, 1974. On that date, the case was continued until May 13. The cause was further continued until May 22. On May 14, the defendant filed a motion to dismiss the indictment for want of prosecution. The motion was denied. On June 4, the People filed a motion to dismiss with leave to reindict. Although the motion showed proof of service, defense counsel claimed that he did not receive a copy of the motion. In any event, the motion was granted and the second indictment was filed on the same day, June 4. That indictment returned to the language of the complaint, "sexual intercourse," and was signed by Cliff Campbell, the same foreman who signed the first indictment. Defendant filed a motion to dismiss the indictment, and the motion was denied.

The theory upon which defendant relies is that the grand jury which rendered the second indictment was prejudiced against him because the evidence against him had been presented before. We note at the outset that the list of witnesses on the second indictment is identical to the list on the first indictment. Defendant has neither alleged nor proved that more or less evidence was taken by the grand jury in rendering the second indictment. We must therefore assume that the same evidence supporting the phrase "sexual relations" supported the change to "sexual intercourse."

Neither party has cited Illinois cases directly on point as determinative of this issue and none have been found. In 42 C.J.S. *Indictments and Informations*, section 34(d) (1944), it is stated:

> "Some courts hold that there is no reason why a grand jury, after returning an indictment, may not subsequently again indict accused for the same offense and that accused cannot object to a second indictment by the same grand jury on the ground of bias and prejudice arising from the consideration of the first indictment. Other courts hold that the case may be resubmitted to the same grand jury where the objections to the first indictment can be avoided by merely formal corrections and changes, but not

where formal changes will not suffice and a reconsideration of the charge or the evidence is necessary, for the reason that the grand jurors have already formed an opinion on the merits and hence are subject to challenge on the ground that they are possessed of a state of mind which will prevent them from acting impartially." We view the change from "sexual relations" to "sexual intercourse," though vital, as a formal alteration of common phraseology to comport with the language of the statute defining the offense. (Ill. Rev. Stat. 1973, ch. 38, par. 11—1.) No offense was added by the second indictment, nor was the offense changed in degree or severity. We find no circumstances by which defendant was or could have been prejudiced by the procedure followed in the instant case. He was tried by a jury, and the conviction is supported by overwhelming evidence of guilt. The trial court did not err in failing to dismiss the indictment.

■■ The final contention on appeal is that the 7- to 15-year sentence imposed was excessive. The facts of the case indicate that defendant committed rape while holding a knife to the throat of the prosecutrix. The potential danger to human life in this situation is manifest. In addition, the trial court had before it a presentence report which showed that defendant had a prior theft conviction and a conviction for robbery just 7 months prior to the instant offense. Defendant was on probation for that offense at the time the rape occurred. The State presented evidence at sentencing that the robbery involved a knife and an act of moral turpitude. The trial judge had a superior opportunity to view the defendant and his record and we will not substitute our judgment for his. *People v. Van Gilder*, 26 Ill.App.3d 152, 324 N.E.2d 715 (1975).

The judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.