606 P.2d 1116

STATE of New Mexico, Plaintiff-Appellee,

v.

Alfonso J. ROMERO, Defendant-Appellant.

No. 3895.

Court of Appeals of New Mexico.

Jan. 17, 1980.

**24**

Louis G. Stewart, Jr., Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Charlotte Hetherington Roosen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

ANDREWS, Judge.

Defendant was convicted of criminal sexual penetration (CSP) in the second degree in violation of § 30–9–11(B), N.M.S.A.1978, and appeals, raising four issues: (1) whether the trial court erred in refusing to dismiss the indictment under which he was convicted in view of the fact that another indictment charging the same offense had been issued earlier; (2) whether the trial court erred in refusing to instruct the jury on the elements of the lesser included offense of CSP in the third degree; (3) whether the trial court erred in refusing to allow the prosecuting witness to be questioned as to her prior sexual behavior; and (4) whether the trial court erred in refusing to admit evidence of the psychological condition of the prosecuting witness and in refusing to order her to submit to a psychiatric examination. Although some delicate and novel questions of law are presented by the case, we find that the trial court correctly decided each issue and therefore affirm the conviction.[1]

It is undisputed that defendant had sexual intercourse with the victim. At trial, defendant attempted to show that the victim had consented to the intercourse while the victim maintained that he had forced her to comply by threatening her with a knife.

*Reindictment of the Defendant on the Same Charges*

Defendant, relying on dictum in *State v. Dehler*, 257 Minn. 549, 102 N.W.2d 696 (1960), asserts that the trial court erred in refusing to dismiss an indictment on the grounds that he had already been indicted for the same crime on the same facts. We decline to follow *Dehler.*

The better (and more common) rule was stated by Judge Learned Hand in *United*

---

1. In this appeal, defendant fails to make reference to the facts on the tapes on which he relies for the argument on appeal. Although N.M.Crim.App. 501(a)(4) requires citation to the part of the transcript relied on if an issue is to be considered on appeal, *State v. Reese*, 91 N.M. 76, 570 P.2d 614 (Ct.App.1977), inasmuch as this rule violation as to all issues would result in this defendant not having the merits of his appeal heard, we will consider the appeal. *Olguin v. State*, 90 N.M. 303, 563 P.2d 97 (1977).

*States v. Strewl*, 99 F.2d 474 (2d Cir. 1938), *cert. denied*, 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039 (1939), where it was concluded that either of two indictments charging the same offense could serve as the basis for a conviction:

> The error did not affect Strewl's "substantial rights" in the slightest degree; it was the merest formality whether the proceedings should be carried on under one document or the other, or on which paper the formal entries should be made. (*Id.* at 477.)

Hand was dealing with a case in which the indictment under which the defendant was formally tried was legally defective; and so, with greater reason, we may allow a conviction to stand where the defendant was found guilty under one of two legally sufficient indictments.

■ As noted in *Strewl*, where more than one indictment charging a crime has issued against a defendant, care must be taken in order to prevent the defendant from being exposed to double jeopardy; but *Strewl* contended that this was most properly done by quashing the *first* indictment. In the case at hand, where the State entered a nolle prosequi of the first indictment before jeopardy had attached on either, there can be no question of double jeopardy, and the defendant was not prejudiced in any way.

*Failure to Instruct on Lesser Included Offense*

Defendant's second point is that the court erred when it refused to instruct the jury on CSP in the third degree, a lesser included offense which is distinguished from second degree CSP by the absence of any of the five aggravating factors listed in § 30–9–11(B), in this case § 30–9–11(B)(5), the perpetrator being armed with a deadly weapon.

■ No instruction should be given where there is no evidence to suggest that the lesser offense was the highest degree of the crime committed. *State v. Vigil*, 86 N.M. 388, 524 P.2d 1004 (Ct.App.), *cert. denied*, 86 N.M. 372, 524 P.2d 988 (1974); *State v. Alderete*, 91 N.M. 373, 574 P.2d 592

(Ct.App.1977), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978). In this case, there is no view of the evidence adduced which would support the jury in finding the defendant guilty of third degree CSP which would not also require the jury to find him guilty of second degree CSP; thus the requested instruction was properly refused.

■ The prosecution's theory of the case was that the victim was compelled to submit to the defendant when he threatened to use the knife on her—no evidence was presented which suggests that the victim was coerced in any other manner. The jury could not have concluded that third degree CSP had been committed without speculating as to the existence of a fact not in evidence, the presence of an alternative means of coercion, and such a conviction would have to be overturned. *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976).

*Evidence as to Prior Sexual Behavior of the Victim*

■ Defendant, by proper motion pursuant to § 30–9–16(B), sought the court's permission to present evidence to the effect that the victim had been sleeping with her boyfriend prior to the incident with defendant and had been engaging in prostitution at the same time. The trial court properly refused to allow such evidence to be presented.

In 1975, the New Mexico legislature enacted § 30–9–16, N.M.S.A.1978, which severely limits the opportunity of a defendant charged with certain sexual offenses to impeach the prosecutrix' testimony by presenting evidence as to her prior sexual behavior:

> A. As a matter of substantive right, . . . evidence of the victim's past sexual conduct, opinion evidence thereof or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

In *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978), this Court upheld the statute and ruled that prior sexual activity did not, of itself, bear on the consent of the prosecutrix. Since the defendant made no showing that the victim's past sexual contact with her boyfriend had any bearing on the consent issue, we need only determine whether such a connection may be inferred if the defendant's claim that the victim was a prostitute was supportable.

As in *Herrera*, we find no reason to suppose that this factor is probative on the issue of consent; at first blush it would seem to indicate that the victim was one whose calling would tend to expose her to an unusually high risk of being raped. Such information might well be relevant if it were contended that the intercourse with the defendant was itself an act of prostitution, but here it is entirely irrelevant.

▮▮ The probative value of such evidence must be weighed against its prejudicial effect, and it is clear that its prejudicial effect is great. It is not the province of the jury to pass moral judgment on the victim, and the court should remove the temptation to do so wherever possible.

▮ In addition to its effect in insulating the jury from prejudicial material, § 30–9–16 serves another important purpose, that of protecting the victim of the crime against unwarranted invasions of her privacy. While there is little in the public record to show the intention of the New Mexico legislature in enacting the section, it is clear from the scholarly commentary on similar bills in other jurisdictions that § 30–9–16 was intended to encourage the reporting of rapes by minimizing intrusive inquiry into the personal affairs of the victim. *See, e. g.*, note, *California Rape Evidence Reform: An Analysis of Senate Bill 1687*, 26 Hastings L.J. 1551 (1975).

*Evidence as to the Psychological Condition of the Victim*

▮ Finally, defendant contends that the trial court erred in refusing to admit evidence which, it is claimed, would have tended to show that the fact that the victim was hysterical when she was found by police after the incident was due to her prior mental condition rather than any assault by defendant, and in refusing to order the prosecutrix to undergo a psychiatric examination. We think that the trial court acted properly because the introduction of the evidence and the examination of the victim would have unnecessarily invaded the victim's right to privacy.

The defendant was allowed to introduce uncontroverted evidence which tended to establish several facts bearing on the mental condition of the victim; that she had recently been cast off by a boyfriend; that she had recently undergone voluntary treatment for alcohol abuse; and that she had been very depressed and occasionally suicidal prior to the incident. This questioning covered a period of a year prior to the incident.

Defendant first objects to the trial court's refusal to hear testimony of a psychologist who had treated the victim for various emotional problems and whose reports on the victim had already been introduced into evidence. The exclusion of this testimony needs no justification other than to note that the court is empowered by Rule 403 of the New Mexico Rules of Evidence to exclude material which is merely cumulative.

▮ A more difficult question is raised by defendant's second point, that the court should have permitted defendant to subject the victim to a psychiatric examination. Under Rule 29 of the New Mexico Rules of Criminal Procedure, a criminal defendant has the right of access to material which has a bearing on the offense charged or on a defense thereto. It must be noted, however, that this right to discovery exists only "[u]nless otherwise limited by order of the court". N.M.R.Crim.P. 29(b). As was shown in *State v. Herrera, supra,* such an order may issue under the power given to the court by Rule 31 to:

[M]ake any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, undue

burden . . . . The order may include one or more of the following restrictions: (1) that a deposition requested not be taken.

We cannot agree that the trial court acted improperly in refusing to require the victim to undergo a psychiatric examination. While some authorities have taken the position that psychological examinations should be routinely ordered in rape cases, *see, e. g.,* McCormick, Handbook on the Law of Evidence, § 45, at 95–96 (2d Ed. 1972), we feel that this rule is based on outmoded notions of the instability and duplicity of women in general and, as such, should be discarded altogether. *See* O'Neale, *Court Ordered Psychiatric Examination of a Rape Victim in a Criminal Rape Prosecution—or How Many Times Must a Woman be Raped?,* 18 Santa Clara L.Rev. 119 (1978).

By enacting § 30–9–16, the New Mexico legislature has shown that it is the strong public policy in this state to prevent unwarranted intrusions into the private affairs of the victims of sex crimes. It would be inconsistent for this Court to uphold this policy as regards inquiry into the prior sexual behavior of the prosecutrix but to refuse to protect her from a more profoundly intrusive probing of her psyche. The anomaly of such a result is clear when one considers that a reasonably thorough psychiatric examination would necessarily entail inquiry into the sexual feelings and experiences of the victim. Insofar as a psychiatric examination probes the past sexual behavior of the victim, it is within the terms of § 30–9–16. If the psychiatric evaluation does not make such inquiry, it is presumptively invalid—the defendant bears a heavy burden in establishing that any reliable indication of the prosecutrix' veracity concerning or behavior during a sexual contact could be obtained without such questioning.

We conclude, therefore, that while court ordered psychiatric examination of the prosecuting witness in a sex crime may occasionally be proper, such an order may not issue unless it is shown that the proba-tive value of the evidence reasonably likely to be obtained from the examination outweighs the prejudicial effect of such evidence and the prosecutrix' right of privacy. Such a showing could not be less than that required for the admission of evidence as to past sexual behavior under § 30–9–16 and *State v. Herrera, supra.*

In the instant case, the probative value of such evidence is small. The salient features of the victim's psychological condition were shown by other evidence, and the State did not attempt to adduce any evidence which called that evidence into question. We certainly cannot hold as a matter of law that defendant was entitled to conduct the examination.

Since we find no error, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., concurs in part and dissents in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur and dissent.

Defendant was convicted of Criminal Sexual Penetration (CSP) in the second degree in violation of § 30–9–11(B), N.M.S.A. 1978 and appeals. I would reverse.

A. *A lawyer must render adequate assistance for convicted defendant on appeal.*

Defendant was sentenced 10 to 50 years imprisonment with 5 years suspended. In criminal cases where the liberty of a defendant is at stake, lawyers who fail to render adequate assistance on appeal should be placed on the rack with the sword of Damocles overhead.

Defendant's Brief-In-Chief is of no assistance to defendant. State filed a motion for summary affirmance, dismissal of defendant's appeal or that defendant's lawyer be ordered to show cause why he should not be held in contempt of court for failure to

comply with the Rules of Criminal Appellate Procedure. The motion was denied. Pursuant to Rules 102 and 404 of the Rules of Criminal Appellate Procedure, appeals should not be dismissed or affirmed except in extreme cases, but this Court should consider sanctions against heedless counsel. *Olguin v. State*, 90 N.M. 303, 563 P.2d 97 (1977).

It is obvious that defendant's lawyer was overly burdened with criminal litigation. In *Proper v. Mowry*, 90 N.M. 710, 713, 568 P.2d 236, 239 (Ct.App.1977), this Court said:

Continued criticism of briefs filed on appeal reflects that appellate courts, not the attorneys involved, must search for a just and fair solution of the case. Attorneys who are inexperienced, or who do not have time in which to perform their duties properly, should seek assistance. Otherwise, their clients will suffer the pain of outrageous misfortune.

Lawyers who play the part of street urchins in the trial and appeal of criminal cases should be subject to reprimand, discipline or sanctions. Rule 1–102 of the Code of Professional Responsibility reads in part:

A lawyer shall not:

\* \* \* \* \* \*

(5) Engage in conduct that is prejudicial to the administration of justice;

\* \* \* \* \* \*

"The action is required for 'the protection of the public, the profession, and the administration of justice, and not the punishment of the person disciplined.'" *In re Nelson*, 79 N.M. 779, 784, 450 P.2d 188, 193 (1969).

Defendant's Brief-In-Chief contains six claims of error, five of which relate to the trial court's rulings on evidentiary matters. The brief is totally void of any transcript or tape references which would indicate to this Court or to the State where objections or rulings were made or where any of the claimed error is preserved. The rule is that this Court will not search the record to find error upon which a trial court may be reversed. *State v. Weber*, 76 N.M. 636, 417 P.2d 444 (1966); *State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977). But

where cases are assigned to the limited calendar *without briefs having been filed*, it has been held that an appellate court will not act as counsel for defendant, but it will carefully search the record, evidence and instructions for fundamental error only. *Metheny v. State*, 485 P.2d 776 (Okl.Cr.App. 1971).

Nevertheless, we must keep in mind that violations of appellate rules in criminal cases are perpetrated by defendant's lawyer, not defendant. A dismissal affects only the defendant. *Linam v. State*, 90 N.M. 302, 563 P.2d 96 (1977). When such briefs are filed and noticed to this Court, the briefs should be returned to defendant's lawyer with sanctions imposed and a proper brief ordered. To dismiss an appeal when it may be meritorious, punishes the unfortunate defendant who believes his lawyer is supposedly representing and protecting his rights on appeal. The better view is that such cases should be disposed of on the merits. *State v. Day*, 7 Wash.App. 965, 503 P.2d 1098 (1972).

The tendency toward liberality in construing appellate rules must not be abused and treated as a license to ignore plain and well-settled practices, nor to authorize the abandonment of all reasonable care in the preparation of briefs. It is true that in criminal cases, failure to conform to requirements has often been ignored. But the only purpose of appellate rules is to insure a clear and unequivocal presentation of questions and the expedition of cases on their merits.

This Court may have been too patient in the past with deviations from its rules, and we should serve notice that compliance will be required in future briefing. *State v. Gager*, 45 Haw. 478, 370 P.2d 739 (1962). "Time and the increasing volume of cases militate against tolerance of the careless practices by too many attorneys who practice before this Court." *Lipps v. State*, 254 Ind. 141, 258 N.E.2d 622, 625 (1970).

We should hold that defendant's attorney is not entitled to any compensation for services rendered in this appeal, and any compensation paid should be refunded and re-

ceipt therefor filed in this case in the district court clerk's office.

B. *Reindictment of defendant by the same grand jury on the same facts was not invalid.*

On January 18, 1978, the Grand Jury returned an indictment against defendant for CSP in the second degree in violation of § 30–9–11(B).

On March 1, 1978, the same Grand Jury returned an indictment against defendant in Count I for the same criminal offense, and in Count II for kidnapping.

On May 4, 1978, defendant moved to dismiss the indictment "because of the improper and unfair conduct of the office of the District Attorney. . . . in violation of the Defendant's constitutional rights . . without the presentation of new evidence." A hearing was held and the motion denied. Defendant failed to provide this Court with a record of the hearing and waived his right to dismiss the indictment because matters outside the record present no issue for review. *State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979).

Grand Jury re-indictment of defendant is a matter of first impression. I want to repeat the admonition of the Supreme Court in *Davis v. Traub,* 90 N.M. 498, 500, 565 P.2d 1015, 1017 (1977):

> . . . The grand jury has evolved to where it now functions as a guardian of the citizens' right to be free from government harassment unless good cause is shown for attempting a prosecution. The grand jury is not, and should not be, the tool of the prosecuting authority to manipulate at will. . . .

*Traub* adopted the views expressed in *State v. Hill,* 88 N.M. 216, 539 P.2d 236 (Ct.App.1975).

Defendant relies on *State v. Dehler,* 257 Minn. 549, 102 N.W.2d 696, 89 A.L.R.2d 496 (1968), cited with approval on other grounds in *Trujillo v. State,* 79 N.M. 618, 447 P.2d 279 (1968). Dehler was indicted in 1941 for the crime of murder of his mother, father, brother and sister in the first degree. He

was tried and convicted on the indictment charging him with the murder of his mother. The other three remaining indictments were dismissed. In 1959, 18 years later, the Grand Jury again returned the same four separate indictments. In the course of the opinion, the Court said:

> . . . The December 1941 indictment in connection with his mother's death invalidates the June 1959 indictment charging the same offense for the same acts. As a result the validity of any future proceedings must be determined with reference to the 1941 indictment. [102 N.W.2d at 700.]

The basis for invalidity of the subsequent indictment was res judicata, not that of re-indictment. In Minnesota, as elsewhere, the grand jury has the power upon the same evidence against the same person, when the first indictment is still pending, to file another indictment with the same or different counts, if in its judgment, the administration of justice requires it. *State v. Ginsberg,* 167 Minn. 25, 208 N.W. 177 (1926); *State v. Iosue,* 220 Minn. 283, 19 N.W.2d 735 (1945); *People v. Delaney,* 28 Ill.App.3d 315, 328 N.E.2d 656 (1975); *State v. Hassard,* 45 Haw. 221, 365 P.2d 202 (1961); *De Leon v. Territory,* 9 Ariz. 161, 80 P. 348 (1905); *People v. Gilbert,* 26 Cal. App.2d 1, 78 P.2d 770 (1938); *People v. Follette,* 74 Cal.App. 178, 240 P. 502 (1925).

True, the second indictment did add a second count of kidnapping, but this offense was dismissed. If it had not been dismissed, it would have raised a serious question. In *Delaney, supra,* the court said:

> . . . *No offense was added by the second indictment nor was the offense changed in degree or severity.* We find no circumstances by which defendant was or could have been prejudiced by the procedure followed in the instant case. . . [Emphasis added.] [328 N.E.2d at 659.]

Of course, a nolle prosequi must be filed as to first indictment. *Hassard, supra.* In the instant case the district attorney filed one. A defendant cannot be convicted under two or more indictments for one single act. *Territory v. McGrath,* 16 N.M. 202, 114 P. 364 (1911).

We can find no basis upon which to hold the second indictment invalid.

### C. *The failure to instruct on a lesser included offense was reversible error.*

It is important to note that at the first trial held on June 5 and 6, 1978, the jury hung and on June 7, the court declared a mistrial. The second trial began August 2, 1978 and concluded August 4 with a verdict of guilty of CSP in the second degree. Defendant was sentenced 10 to 50 years imprisonment with 5 years thereof suspended. During the jury deliberations in the second trial, one juror submitted a lengthy note and question to the court which indicated respect for defendant's mental condition at the time of the offense. The court properly told the jury that it must judge the case solely on the evidence presented. These facts indirectly bear upon the importance of giving the jury some leeway in arriving at a lesser verdict.

Defendant submitted U.J.I.Crim. 9.41, a requested instruction, which is the lesser included offense of CSP in the third degree. The request was denied.

The difference between second and third degree CSP in this case is the presence or absence of personal injury of the victim resulting from force or coercion used by defendant, and whether defendant was armed with a deadly weapon. Compare § 30–9–11(B)(2) and (5) with § 30–9–11(C).

Section 30–9–10(C) defines "personal injury" to mean "bodily injury to a lesser degree than great bodily harm, and includes, but is not limited to, disfigurement, mental anguish, chronic or recurrent pain, pregnancy or disease or injury to a sexual or reproductive organ."

Section 30–1–12(B) defines a "deadly weapon." After many descriptions, the clause ends: "or any other weapons with which dangerous wounds can be inflicted." For a knife to be a deadly weapon it must come within this quoted phrase. *State v. Martinez*, 57 N.M. 174, 256 P.2d 791 (1953).

The defense in this case was victim's consent to sexual intercourse. Defendant testified that when the victim left work at 2:30 a. m., he drove her west on the highway, stopped for gasoline, then went to a rest stop. The victim said the rest stop was too crowded for her. He drove back on the highway, had sexual intercourse with her and fell asleep. The engine had died. Defendant went for gasoline and the victim would not go with him but went walking. In addition, the defendant testified that he did not have a knife and does not carry a knife. Defendant's brother testified that he had been with his brother the same evening and he did not see his brother with a knife.

The trial court concluded that the only evidence of threat or coercion to support a conviction was that of the knife; that if the jury rejected the victim's testimony as to the knife, they would be required to find defendant not guilty since the victim never claimed any other threats or force were used; that there was no evidence that would justify the giving of the lesser included instruction. Under a long established rule of law, the trial judge was mistaken. If defendant used force and coercion, but did not injure the victim and was not armed with a knife, he was guilty of third degree CSP.

In a CSP case involving the issue of an instruction on a lesser included offense, *State v. Jiminez*, 89 N.M. 652, 656, 556 P.2d 60, 64 (Ct.App.1976) said:

> A defendant is entitled to an instruction on a lesser included offense *if there is some evidence tending to establish the lesser offense.* . . . [Emphasis added.]

"Some evidence tending to establish" began with *State v. Sandoval*, 59 N.M. 85, 279 P.2d 850 (1955). To date, no explanation of this language has appeared.

It is difficult to articulate a definite legal standard on the quantum of evidence which must be adduced to trigger the instruction on a lesser included offense. On the duty of the court to charge the lesser degree, the evidence must be viewed in the light most favorable to defendant. *People v. Battle*, 22 N.Y.2d 323, 292 N.Y.S.2d 661, 239 N.E.2d

535 (1968). "The word 'tending' has not that elastic meaning attributed to it . . nor has it a signification in judicial proceedings different from its common and ordinary use. In its primary sense it means direction or course towards any object, effect or result—drift." *Hogue v. State*, 93 Ark. 316, 124 S.W. 783, 785 (1910). "Tending to establish" is a lesser burden than creating a reasonable doubt as to the existence of the lesser offense. *See, State v. Day*, 90 N.M. 154, 560 P.2d 945 (Ct.App. 1977). It is more than a scintilla, but less than that which would compel a reasonable doubt. *Christie v. State*, 580 P.2d 310 (Alaska 1978).

The testimony of the defendant himself is "some evidence," even though the evidence is weak and not conclusive, or if some fact or circumstance appears from which an inference reasonably and fairly may be drawn, pointing to a degree of guilt lower than that specifically charged. The weight of the testimony is for the jury, not the judge. *State v. Childers*, 217 Kan. 410, 536 P.2d 1349 (1975); *State v. Carey*, 6 W.W. Harr. 521, 178 A. 877 (1935); *State v. Parsons*, 18 Ohio App.2d 123, 247 N.E.2d 482 (1969) (tending to support the instruction); *People v. Burns*, 88 Cal.App.2d 867, 200 P.2d 134 (1948) (any evidence deserving of any consideration whatever). *People v. Shuman*, 37 N.Y.2d 302, 372 N.Y.S.2d 60, 333 N.E.2d 363 (1975) (some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower). *Johnson v. State*, 531 S.W.2d 558 (Tenn.1975) (any evidence which reasonable minds could accept as to any offenses).

It has been said that "If there is even the slightest evidence that the defendant may have committed the degree of the offense inferior to and included in the one charged, the law of such inferior degree ought to be given." *State v. Young*, 22 Wash. 273, 60 P. 650, 651 (1900), but later modified. *See State v. Norby*, 20 Wash.App. 378, 579 P.2d 1358 (1978).

We should hold that "some evidence tending to establish the lesser offense" means: any evidence, testimonial, factual or circumstantial, or that from which a reasonable inference can be drawn, that points toward a degree of guilt lower than that specifically charged, even though such evidence is weak and not conclusive.

The public interest in the administration of criminal law dictates that a jury shall not be forced to find the defendant guilty of a higher degree of a crime or acquittal if, under the facts and circumstances in evidence, the jury wants to find the defendant guilty of a lesser degree. The jury is entitled to an intermediate ground. If an instruction on CSP third degree had been given in the first trial, perhaps the jury could have arrived at a verdict. In the second trial, the instruction could have been a guideline for the jury. "But where there is no evidence, and no fact or circumstances from which an inference justly may be deduced, tending to prove an offense of lesser degree than the one specifically charged, the court commits no error in withdrawing from the jury's consideration an alleged issue with respect to which there is no supporting evidence." *State v. Carey, supra*, 178 A. at 882.

When there is evidence tending to sustain such degree, it is mandatory to instruct the jury in every degree of the crime charged. *State v. Ulibarri*, 67 N.M. 336, 355 P.2d 275 (1960).

New Mexico has a "knife" case wherein defendant was convicted for the offense of assault with a deadly weapon. The failure to instruct upon simple assault was reversible error where the jury might have found under the evidence, either that injuries to the victim were inflicted by coming in contact with barbed wire during a fight with defendant, or that injuries were caused by a knife of such character as not to constitute a deadly weapon. *State v. Mitchell*, 43 N.M. 138, 87 P.2d 432 (1939). The court said:

> And, there being evidence in the case sufficient to justify a jury in finding appellant guilty of simple assault only, this should have been submitted by the court. [id. 141, 87 P.2d 433].

In the instant case, evidence that defendant did not have a knife and did not injure the victim was sufficient to find the defendant guilty of third degree CSP only. The failure to instruct the jury on third degree CSP was reversible error.

### D. *Prior sexual conduct of victim with others is not admissible in evidence.*

Prior to trial, defendant filed a written motion pursuant to § 30–9–16, N.M.S.A. 1978 for an evidentiary hearing as to the admissibility of the prior sexual conduct of the victim. On July 24, 1978, a fifteen minute hearing was held and defendant's · motion was denied. Defendant offered no evidence and conceded that any evidence presented would relate to her sexual activity with third persons. The failure of defendant's attorney to comply with the law denied defendant the effective assistance of counsel.

Pursuant to § 30–9–16(A), evidence of the victim's past sexual conduct is admissible in evidence if the court finds it is "material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value." To seek this relief, defendant must first comply strictly with § 30–9–16(B). Defendant must seek an in camera hearing in which evidence is presented and findings made by the court to determine whether the evidence is relevant, pertinent and admissible on the issue of consent. *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.1978). Past sexual conduct, in itself, indicates nothing concerning consent in a particular case. There must be a reasonable basis for believing that past sexual conduct is pertinent to the consent issue. Absent a showing sufficient to raise an issue as to relevancy, questions concerning past sexual conduct are to be excluded. *Herrera, supra.*

A victim's sexual relation with others than the defendant are properly excluded. "Accordingly, counsel may not ask complainant about her sexual relations with others nor attempt to impeach her credibility by examining other witnesses concerning [this] knowledge of specific instances in which complainant engaged in sexual intercourse in the past." *McLean v. United States*, 377 A.2d 74 (D.C.Ct.App.1977). Inasmuch as we make no distinction as to relevance between specific acts and reputation, *Herrera, supra*, no evidence of the victim's past reputation is relevant on the issue of conduct and any evidence thereof is properly excluded, unless the trial court finds the evidence relevant. "Reputation testimony should not be admitted except in the most unusual cases where the probative value is precisely demonstrated and outweighs the prejudicial effect of the testimony." *McLean, supra*, (id. 79). *Contra, State v. Howard*, 544 P.2d 466 (Utah 1975) relied on by defendant. The *Howard* opinion is based upon its Rules of Evidence similar to but not comparable with Rule 405 of the New Mexico Rules of Evidence. Nevertheless, I quote with approval the philosophical approach of the court:

> As it is often correctly said: this accusation most always arises from an incident which occurs with only two parties present. It is one in which it is easy to accuse, but hard to defend against. If the accused is convicted, the result can be not only a long prison term, with the resulting serious effects on a man's life, but the stigma always remains. Therefore in serving the ends of justice and protecting the public interest it is important that the utmost care be exercised to protect not only the woman who claims to have been outraged, but also the man who is so accused.

The trial court properly held that prior sexual conduct of the victim with others was not admissible in evidence.

### E. *The exclusion of psychiatric evidence on victim's mental condition may or may not be relevant at a new trial.*

Defendant sought to introduce the testimony of Dr. Carol Jones relating to the mental condition of the victim at the time of the alleged crime. The doctor had admitted the victim to some hospital on October 5, 1977 and discharged her on October 24, 1977, some three weeks before the al-

leged crime. The trial court denied the doctor the right to testify. No offer of proof was made.

The doctor's report was admitted in evidence. The material contents of the report were disclosed during the cross-examination of the victim. The report itself was not relevant evidence. It did not bear upon the credibility of the victim for purposes of impeachment. Neither did it bear upon the issue of consent to sexual intercourse. A victim's mental condition is irrelevant when force and coercion are used or when it is not related to the issue of consent. *State v. Martin, supra.*

The admission or exclusion of expert testimony, even though relevant, rests within the discretion of the trial court. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances. The issue is whether the excluded evidence affected a substantial right of defendant. *State v. Brown,* 91 N.M. 320, 573 P.2d 675 (Ct.App. 1977).

If upon a retrial of this case, the doctor testifies that the victim's mental condition is a fact that supports defendant's defense of consent, it is admissible. If not, it is inadmissible.

### F. *Psychiatric examination of victim rests in discretion of court.*

On July 24, 1978, some nine days before the second trial, defendant requested that the victim be ordered to submit to a psychiatric examination. The request was denied. The question of whether a victim in sex offense cases can be compelled to undergo a psychiatric examination is one of first impression.

The authorities have been collected in *Ballard v. Superior Court of San Diego County,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (1966), 18 A.L.R.3d 1416 (1968), and the annotation that follows: *Requiring Complaining Witness in Prosecution for Sex Crime to Submit to Psychiatric Examination,* 18 A.L.R.3d 1433 (1968). *Ballard* is the leading case on the subject matter. Justice Tobriner said:

Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation *if the defendant presents a compelling reason for such an examination. . . .* [Emphasis added.] [49 Cal. Rptr. at 313, 410 P.2d at 849.]

This rule is applicable in any case that rests upon the uncorroborated testimony of a victim. If a victim's testimony is substantially corroborated, and no evidence appears that the victim's admitted mental problems affected her ability or willingness to tell the truth, no abuse of discretion can arise in denial of a psychiatric examination. *People v. Dentley,* 31 Ill.App.3d 679, 334 N.E.2d 774 (1975); *People v. Seel,* 68 Ill.App.3d 996, 25 Ill.Dec. 99, 386 N.E.2d 370 (1979).

Psychological problems do not necessarily affect competency to testify. *People v. Middleton,* 38 Ill.App.3d 984, 350 N.E.2d 223 (1976). A mandatory rule that a rape victim submit to a psychological or psychiatric examination would be contrary to public policy. *Forbes v. State,* 559 S.W.2d 318 (Tenn.1977). The only purpose of the rule is to test the credibility of the victim. The victim "should not, and realistically cannot, be forced to submit to a psychiatric examination or to cooperate with a psychiatrist. In the event that the witness thus refuses to cooperate, however, a comment on that refusal should be permitted." [49 Cal.Rptr. at 313, 410 P.2d at 849.]

A "compelling reason" for such an examination is necessary because evaluation of the credibility of a witness is within the jury's province. To subject the witness's testimony to attack by expert testimony outside the presence of the jury may constitute an invasion of the jury's sphere of work. It may entail the need for the State to subject the victim to such an examination. The prospect of a parade of experts with conflicting opinions may confuse rather than enlighten the jury. The guilt or innocence of the accused by an excursion into the mental state of the victim, one who

may be a timid soul, would detract from the curcial issue in the case. A healthy skepticism as to the utility and reliability of such psychiatric testimony was stated by Judge Jerome Frank in a special concurring opinion in *United States v. Flores-Rodriguez*, 237 F.2d 405 (2nd Cir. 1956). Psychiatry has not yet reached that state of development where an invasion of the right of privacy of a victim by exposure of her life experience, irrelevant to the issue of the guilt or innocence of an accused, cannot be effectively used to determine her credibility.

In *Hudson v. State*, 368 So.2d 437, 438 (Fla.App.1979), the court said:

> The trial judge conducted a personal examination of the victim to determine the victim's competency to testify. After the inquiry, the judge was satisfied as to the victim's competency. Thus, we find no abuse of discretion on the part of the trial judge in denying [a] motion for psychological examination.

In the instant case, the victim testified in the original trial. Her credibility was tested. If defendant had any basis for psychiatric examination, a "compelling reason" therefore might have been established if lack of credibility were apparent and presented to the court. *Easterday v. State*, 254 Ind. 13, 256 N.E.2d 901 (1970). No factual support in affidavit form or otherwise was submitted in support of the motion. *State v. Maestas*, 190 Neb. 312, 207 N.W.2d 699 (1973), but *see, State v. Schweitzer*, 84 S.D. 384, 171 N.W.2d 737 (S.D.1969). The victim has now testified twice without any signs of untruthfulness. The trial court, absent a psychiatric examination, can in the exercise of its discretion determine the victim's competency to testify.

Even where defendant's psychiatrist filed an affidavit that the victim submit to a psychiatric examination for impeachment purposes, no abuse of discretion occurred in the denial of defendant's motion. *Dinkins v. State*, 244 So.2d 148 (Fla.App.1971). I agree with *Dinkins* that a compelling circumstance arises where there is a "showing that psychiatric examination of the prosecutrix was essential to prevent a manifest miscarriage of justice." [244 So.2d at 150.] For a review of opinions in other states, *see State v. Looney*, 294 N.C. 1, 240 S.E.2d 612 (1978) (no guidelines have been set down for the protection of the witness).

Defendant was not entitled to a psychiatric examination.

Defendant is entitled to a new trial.