STATE of Utah, Plaintiff and Respondent,

v.

Kenneth Virgil HOWARD, Defendant and Appellant.

No. 14175.

Supreme Court of Utah.

Dec. 24, 1975.

Louis G. Tervort, Manti, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Kenneth Virgil Howard was convicted .of rape [1] in a trial to the Sixth District Court. He appeals, contending: (1) that the evidence was not sufficient to justify a belief beyond a reasonable doubt of his guilt, and particularly that it did not show that the prosecutrix resisted and that it was overcome by force; and (2) that the court erred in rejecting a proffer of testimony concerning her reputation as to moral character.

On the early afternoon of April 4, 1975, the defendant, a 26-year-old man, was in Mt. Pleasant, Utah, in connection with his insurance business. He observed the prosecutrix alongside of the highway, stopped his pickup truck, and asked her if she would like to go for a ride. She is a 19-year-old divorcee who had not previously met the defendant. However, she accepted the invitation and they drove for an hour

1. Sec. 76–5–402, Utah Code Ann.1953, makes rape a felony of the second degree.

or two (their estimates vary) through the countryside, including southward through Manti. On southward, about two miles north of Gunnison, the defendant turned off the main highway, and purportedly to demonstrate the qualities of his new truck, drove over a hill and parked.

As might be expected, their respective versions of what occurred next is in sharp conflict.[2] His: that they engaged in some petting and preliminaries, followed by consensual intercourse. Hers: that upon stopping the truck, he seized an ice pick, placed it at her throat and threatened that she must submit; then grabbed her arm, dragged her from the truck, threw her to the ground; and despite her protestations, screaming for help, and struggles to get free, he succeeded in forcible rape.

The parties then got back in the truck and drove back to Manti, where they stopped to use the restrooms at a service station. The attendant could not locate the key to the ladies' room, so they both had to use the men's. The prosecutrix went in first, while the defendant waited; then the defendant went in and the prosecutrix waited several minutes for him. They then got into the truck and proceeded north to Ephraim, where in accordance with the prosecutrix's request, defendant drove her to the home of a cousin. She says she then telephoned her parents about the attack. Meanwhile the defendant continued on about his business. The prosecutrix reported the incident to a man friend, who accompanied her to the sheriff, where she gave the information upon which the defendant was arrested and charged with this crime.

Our statute upon which this charge is laid is Sec. 76-5-406(1)–(2), U.C.A.1953:

Sexual intercourse, . . . without consent of victim—Circumstances.—An act of sexual intercourse, sodomy, or sexual abuse is without [the] consent of the victim . . . . :

(1) When the actor compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(2) The actor compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution.

On the issues: whether the prosecutrix offered "such reasonable resistance as might reasonably be expected under the circumstances"; and whether the defendant by force or threat overcame it: the State points out that the defendant was six inches taller, considerably heavier, and that these things, coupled with his masculine strength and the threat with an ice pick, which could be deadly, her testimony is sufficient to justify the conviction under that statute.

As opposed to the foregoing, the defendant argues some inconsistencies and what he considers unreasonable aspects of the prosecutrix's story, which should leave at least a reasonable doubt as to his guilt. The State's correct rejoinder to this is that the credibility of the witnesses was the exclusive prerogative of the trial court; and that it is neither the duty nor the privilege of this court to disagree and substitute its judgment thereon.[3]

We are in accord with the foregoing as a general proposition. However, due to the particular problems presented in this case, we do have some concern with the nature and persuasiveness of the evidence here because of our conclusion stated below that the trial court erred in excluding proffered evidence. That being so, if upon looking at the whole evidence, it appears beyond a reasonable doubt that

2. That we are obliged to accept that version of the evidence which supports the verdict, see *State v. Wilcox*, 28 Utah 2d 71, 498 P.2d 357; *State v. Ward*, 10 Utah 2d 34, 347 P.2d 865.

3. See *State v. Ward*, 10 Utah 2d 34, 347 P.2d 865; *State v. McCune*, 16 Utah 170, 51 P. 818 (1898).

there is no substantial likelihood that the verdict would have been different in the absence of the error, it should be disregarded.[4] But the reverse proposition is also true: that if there is a reasonable likelihood that in the absence of the error, there would have been a different result, the error should be regarded as prejudicial.

As part of the defendant's case, he called a young man, James P. Carlton, Jr., who had lived in Mt. Pleasant for some years and had been a friend and school mate of the prosecutrix. In laying a foundation for his testimony the foregoing facts were brought out and he responded affirmatively to the question: that he knew the reputation of the prosecutrix in the locality as to moral character. To the next and critical question, as to what that reputation was, the State objected on the ground that it was incompetent, irrelevant, and immaterial. The court sustained the objection; and that is the pivotal aspect of this appeal.

■■ Due to the nature of this crime the problems of proof are fraught with delicacy and difficulty. It is said that many such offenses go unreported because the victims, who have already undergone both physical and mental trauma, are fearful and unwilling to subject themselves to further torture; and that part of this is apprehension of embarrassment and humiliation from inquiry into their personal lives, which sometimes has the effect of putting them on trial instead of the assailant.[5] This is certainly an important factor to consider; and the evil should be minimized to whatever extent that can be done consistent with the processes of justice.

But there are countervailing considerations which also must be taken into ac-

count. As it is often correctly said: this accusation most always arises from an incident which occurs with only two parties present. It is one in which it is easy to accuse, but hard to defend against. If the accused is convicted, the result can be not only a long prison term, with the resulting serious effects on a man's life, but the stigma always remains. Therefore in serving the ends of justice and protecting the public interest it is important that the utmost care be exercised to protect not only the woman who claims to have been outraged, but also the man who is so accused.

■ It is not to be questioned that the fact that a woman may be of bad reputation, or that she may be known to be immoral or even completely dissolute of character, does not give anyone license to forcibly violate her; nor that anyone who does so would be guilty of rape. But ·that is not the question of concern on this appeal. The critical issue here is that of consent. The defendant has cited and relies on cases containing expressions of this court, at least in dicta, indicating agreement with what we think is the proper and majority view in such a situation: that though it is not proper to permit inquiry into specific acts of prior misconduct of the victim, where the critical issue is consent, and the circumstances are such that it reasonably appears that evidence concerning her moral character would have sufficient probative value to outweigh any detrimental aspects of admitting such testimony, it should be admitted.[6]

■ In order to make clear the basis of this decision and its possible application, it is necessary and desirable to distinguish between two classes of cases in which there is a great deal of difference in the probative value of evidence concerning the

---

4. See Sec. 77–42–1, Utah Code Ann.1953; *State v. Lyman*, 10 Utah 2d 58, 348 P.2d 340; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

5. See Note, The Victim in a Forcible Rape Case: A Feminist View, 11 Am.Crim.L.Rev. 335 (1973).

6. See *State v. Sims*, 30 Utah 2d 357, 517 P.2d 1315; *State v. Smith*, 90 Utah 482, 62 P.2d 1110; *State v. Scott*, 55 Utah 553, 188 P. 860; *State v. McCune*, 16 Utah 170, 51 P. 818 (1898); J. Wigmore, Evidence, Sec. 62 (3d ed. 1940); 65 Am.Jur.2d, Rape, Secs. 82–83.

reputation for morality of a victim of a rape. The first, where the evidence tends to show a totally unwelcome intrusion, such as a forcible initial assault, or an abduction, or the gaining of entry into a room by force, or by some form of trick or deception, coupled with a subduing by force or threats. In such situations we agree that any probative value of such evidence is not sufficient to outweigh the negative factors in permitting such inquiry and that therefore it should not be admitted. The second, relates to situations such as the instant one, where the evidence shows that the association between the parties comes about in a sociable and peaceable manner; and where the claim is that there was a transition into violence; and where there is thus a genuine and critical issue as to consent. It is in such instances that the probative value of the victim's reputation as to moral character is sufficient to outweigh the negative factors and justify the admission of such evidence.

The foregoing conclusion is in accord with our Rules of Evidence. Rule 47 provides in part: ". . . when a trait of a person's character is relevant as tending to prove his conduct on a specified occasion, such trait may be proved in the same manner as provided by Rule 46 . . ." Rule 46 provides for proof of such a trait by evidence of reputation.

When the various aspects of the proffer of evidence under scrutiny here are considered in the light of what has been said herein, and of the superseding and major objective: that of ascertaining the truth in this controversy, we think its probative values outweigh any detrimental effects such a ruling may have and that the evidence should have been admitted.

It is further to be observed that even though this was a trial to the court, when that is done, it should be upon all of the competent evidence proffered, just the same as in the case of trial by a jury. The error in excluding this proffered evidence is such that we cannot conclude with assurance that if it had been admitted there may not have been a different result by raising a reasonable doubt as to the issue of the prosecutrix's consent, or her resistance, and the overcoming of it by threats or force. Therefore, it is our judgment that the conviction should be vacated and the case remanded for a new trial. No costs awarded.

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., concurs in the result.