**Spencer R. McLEAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11150.**

District of Columbia Court of Appeals.

Argued June 7, 1977.

Decided Sept. 2, 1977.

---

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellant was tried by a jury and convicted of rape, D.C. Code 1973, § 22–2801, and sentenced to a term of fifteen years under the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1970). On appeal, he urges that it was reversible error for the trial judge to exclude (a) testimony that the complaining witness had engaged in sexual relations *with others* on prior occasions, and (b) testimony that she had a reputation in the community for unchastity. Appellant offered this evidence to support his defense that the complaining witness consented to have intercourse with him.

The government's evidence disclosed that appellant and the complaining witness, who was seventeen at the time of the incident, were neighbors and had known each other for nine or ten years (Record at 66). On June 25, 1975 at about 9:30 p. m., complainant was at home with her friend, Diane Tyler, when appellant called and made arrangements with her to go to the movies. They left shortly thereafter in appellant's sister's car and drove to the vicinity of 14th and Sheridan Streets, N.W., where appellant told her that he had to speak to someone (Record at 70). Appellant went into an apartment house while complainant waited in the car. Several minutes later he returned and said that the stop-over would take longer than expected and invited her to accompany him inside. Moments after she entered the apartment three young men came into a room where she was sitting and with the assistance of appellant, forced her into an unlit bedroom. Complainant testified that she pleaded with appellant to make them stop, but instead he was helping them (Record at 73). The four men disrobed her, held her down, and according to her testimony, made comments while appellant had intercourse with her [1] (Record at

Phillip L. Kellogg, Washington, D. C., with whom James L. Lyons, Washington, D. C., was on the brief, for appellant.

Jeffrey Blumenfeld, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

1. The complaining witness testified that although the room was dark and she could not clearly identify the physical features of the other three men, she knew that appellant was the

74–75). The other three in turn had intercourse with her and then left the room (Record at 75–76).

After the men left, she locked the bedroom door, turned on the light, found a telephone near the bed and called Diane Tyler. Verna Avery, Diane's sister, testified that she was awakened by the call and that complainant sounded "anxious or panicky" (Record at 193) when she told her to tell Diane to come to pick her up at 14th and Sheridan Streets. As complainant hung up the phone she heard a "picking" sound at the door (Record at 77) and a man then entered the room, turned out the light, and asked her to perform oral sodomy. When she refused and turned on the light she realized the man was Raymond Foster, one of appellant's friends. He immediately recognized her and apologized saying, "Wow, I didn't know who you were" (Record at 84) and then left the room.[2]

The complainant dressed, left the apartment and started to walk home. Several blocks from her house, two men whom she knew as Barry and "Seabird" and another woman saw her crying and offered her a lift home (Record at 87–88). However, instead of taking her directly home, the men dropped the woman off first and then went to a party in Maryland. Barry and Seabird went into the party while complainant waited for them in the car. Minutes later Seabird returned and said that he had heard about what happened and asked complainant to have sex with him (Record at 117). She then ran away from the car.

Officer Thomas Wass, a Maryland police officer, testified that while on duty in his patrol car, he spotted a woman running from a car and when she saw his cruiser she ran to his car, banged on the window, and said "Let me in, let's get out of here . . . ." (Record at 139–40). The officer testified that she was "upset and hysterical" (Record at 140) and after a few minutes she calmed down and told him that she had been raped. The officer alerted the Metropolitan Police that he had a possible rape victim and minutes later turned her over to a District of Columbia police officer at the D.C. line.

Complainant was taken to police headquarters and interviewed by Detective Baker of the Sex Squad. He testified that they returned to the Sheridan Street address where she said the rape occurred and then went to D.C. General Hospital (Record at 185). Dr. Charles Franklin testified that he examined complainant at about 4 a. m. (Record at 165) and found no external injuries or bruises (Record at 166). The doctor conducted an internal examination and observed several lacerations and scratches that would be "consistent with intercourse of normal duration . . . [or] prolonged duration . . . [or] multiple intercourse over a short period of time" (Record at 169).

Defense counsel requested a ruling at the beginning of trial whether he could offer witnesses who would testify that complainant had engaged in sexual intercourse with others in the past. The trial judge ruled that such evidence was not relevant to the issues at trial and therefore inadmissible (Record at 33–34, 106, 301–02). During trial appellant proffered two witnesses who testified in a hearing out of the presence of the jury that they had heard other members

first to have sexual intercourse with her because his hair was longer than the other three (Record at 95, 116–17). She also testified that she was sure that appellant assisted the others when they in turn had sexual intercourse with her because she saw him holding her legs (Record at 116–17).

2. Raymond Foster was a codefendant in this case and was acquitted by the jury of the charge of rape. Complainant testified that although she did not actually see him in the room while the rape occurred, she recognized his voice as one of the people making comments during the rape (Record at 85, 123–24). Foster testified that he rented the apartment on Sheridan Street. On the evening that the rape occurred he returned at about 1 a. m. to find a man that he did not recognize in his apartment. The man said that if he wanted fellatio performed on him he should go into the bedroom. Foster entered the bedroom and asked the woman to perform the act, but when she turned on the light, he recognized her, apologized and left the room.

of the community comment on complainant's reputation for unchastity. The trial court refused to allow these witnesses to testify because they had not convinced the trial judge that there was an adequate basis for their knowledge of the prosecutrix's reputation (Record at 300–01).[3]

I

■ Central to appellant's position in the instant case is his assertion that the probative value of proof of complainant's prior acts of sexual intercourse with others outweighs the prejudice to the complainant. The prejudice of such evidence is readily seen: it diverts the jury's attention to collateral matters and probes into the private life of the victim of a rape. See Wynne v. Commonwealth, 216 Va. 355, 218 S.E.2d 445, 446 (1975). On the other hand, the probative value of the evidence is less easily recognized. Apparently, appellant views evidence of past sexual intercourse by a woman with others as admissible because it tends to establish her sexually promiscuous character which in turn tends to prove that on the particular occasion she consented to sexual intercourse with the accused rather than submitted against her will out of fear. We agree with the Supreme Court of Arizona in Pope v. Superior Court, 113 Ariz. 22, 28, 545 P.2d 946, 952 (1976), that "[t]he fact that a woman consented to sexual intercourse on one occasion is not substantial evidence that she consented on another, but in fact may indicate the contrary."

■ Generally, the law disfavors the admission of evidence of a person's character in order to prove conduct in conformity with that character, See 1 J. Wigmore on Evidence, § 198 (3rd ed. 1940); McCormick on Evidence, § 190 (E. Cleary 2d ed. 1972); Fed.R.Evid. 404(a). There are exceptions to this general proposition, however, but none

appear to encompass the proffer here. Thus, one exception is impeachment of a witness' credibility by evidence that the witness has a bad reputation for truth and veracity. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). So too, a witness' credibility may be impeached by extrinsic evidence of a prior conviction of a felony or a criminal offense involving dishonesty or false statement. D.C. Code 1973, § 14–305. Indeed, evidence of prior misconduct short of conviction of a witness who is the accused may be admissible to show motive, intent, absence of mistake or accident, a common scheme or plan, and identity. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); Fed.R. Evid. 404(b). Alternatively, the federal court of appeals here has suggested that a witness other than the accused may be asked about a prior act of misconduct, not amounting to a criminal conviction, provided such misconduct "bears directly upon the veracity of the witness in respect to the issues involved in the trial." Kitchen v. United States, 95 U.S.App.D.C. 277, 279, 221 F.2d 832, 834 (1955), cert. denied, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958).[4] In our view the proffer in the instant case fits into none of these exceptions to the general rule prohibiting the admission of character evidence based upon proof of past acts.

■ We note that the recent trend in other jurisdictions is that specific acts of sexual intercourse on the part of the complaining witness are not admissible to prove that she consented to sexual intercourse with the accused. State v. Ruhr, 533 S.W.2d 656, 659 (Mo.App.1976); Pope v. Superior Court, supra; State v. Howard, 544 P.2d 466, 469 (Utah 1975); People v. Whitfield, 58 Mich.App. 585, 228 N.W.2d 475, 478 (1975); Wynne v. Commonwealth, supra;

---

3. In ruling that evidence of a woman's reputation for unchastity is inadmissible in a prosecution for rape, we need not consider appellant's contention that the trial court erroneously excluded this testimony because counsel failed to lay a proper foundation for the evidence. See Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

4. If the witness denies the prior misconduct, however, the examiner generally must take the witness' answer and not inquire further of the witness or introduce extrinsic proof. United States v. Robinson, 174 U.S.App.D.C. 224, 227, 530 F.2d 1076, 1079 (1976).

*State v. Geer*, 13 Wash.App. 71, 533 P.2d 389 (1975). We endorse the approach taken by these courts, *viz.*, the exclusion from evidence of prior acts of sexual intercourse with others besides the defendant because such evidence is not probative to the issue of the prosecutrix's consent.[5]

■ Appellant has alternatively argued that the proffered evidence would impeach the credibility of the complaining witness. It should be obvious that evidence of prior sexual acts by the prosecutrix has no relevance whatsoever to her credibility as a witness and therefore defense counsel should be precluded from asking the prosecutrix questions concerning her past sex life. *See State v. Geer*, 13 Wash.App. 71, 73, 533 P.2d 389, 391 (1975), and note 8 *infra.* We therefore conclude the trial court properly excluded evidence of the complainant's sexual relations with others than the accused.[6] Accordingly, counsel may not ask complainant about her sexual relations with others nor attempt to impeach her credibility by examining other witnesses concerning their knowledge of specific instances in which complainant engaged in sexual intercourse in the past.

## II

Whether evidence of reputation of the prosecutrix for unchastity is admissible, when the defense at trial of a rape case is consent, appears to be an issue upon which state jurisdictions have split. Appellant argues that reputation testimony is vital to assist the jury in determining the *credibility* of the complainant on the issue whether she consented to have sexual intercourse with the accused. Appellant urges the court to follow a recent decision by the Supreme Court of Utah which held that reputation testimony was admissible on the issue of consent where "the probative value of the victim's reputation as to moral character is sufficient to outweigh the negative factors and justify the admission of such evidence." *State v. Howard*, Utah, 544 P.2d 466, 470 (1975).[7] The Utah court will admit evidence of a woman's reputation for unchastity if there is a genuine and critical issue of consent and "the evidence shows that the association between the parties comes about in a sociable and peaceful manner and where the claim is that there was a transition into violence . . . ." *Id.*

■■ We are not persuaded, however, in this case that the probative value of reputa-

5. We note that evidence of specific acts of sexual intercourse with the *defendant* himself should be admitted where there may be an issue of identity at trial or to rebut the government's evidence that the prosecutrix did not consent to sexual intercourse on the particular occasion. *See State v. Roberson*, 543 S.W.2d 817, 820 (Mo.App.1976); *Pope v. Superior Court, supra*, 545 P.2d at 953; *People v. Wilcox*, 33 Ill.App.3d 432, 337 N.E.2d 211, 216 (1975); *People v. Whitfield, supra*, 228 N.W.2d at 478.

In the present case, the court permitted testimony by appellant that he had sexual intercourse with the complainant on many occasions, including a trip to Atlantic City, New Jersey, and this testimony was properly presented to the jury.

6. There can be *unusual circumstances* where the defense may inquire into specific sexual acts by the prosecutrix when the probative value of the evidence is clearly demonstrated *and* is shown to outweigh its prejudicial effect. As an example of such a situation, the Arizona Supreme Court in *Pope v. Superior Court, supra*, 545 P.2d at 953, noted that evidence would be admissible "which directly refutes physical or scientific evidence, such as the victims al-

leged loss of virginity, the origin of semen, disease or pregnancy." Several other states have recognized limited exceptions in enacting legislation which excludes evidence of prior sexual acts of the prosecutrix in prosecutions for rape. *See* Mich.Code Ann. § 28.788(10), M.C.L.A. § 750.520j (1974); California Evidence Code § 1103 (1974).

7. The court in *Howard, supra* at 469, expressed sensitivity to various problems associated with the crime. "It is said that many . . . [rapes] go unreported because the victims, who have already undergone both physical and mental trauma, are fearful and unwilling to subject themselves to further torture; and that part of this is apprehension of embarrassment and humiliation from inquiry into their personal lives, which sometimes has the effect of putting them on trial instead of the assailant." (Footnote omitted.) We agree, and hasten to add that these "negative factors" serve well as justification for excluding evidence of complainant's prior sexual relations with other men. The court in *Howard* ruled that no inquiry may be made into specific acts of sexual intercourse on the part of complainant. *Id.*

tion testimony outweighs its prejudicial effect. We note that the court in *Howard* never identifies precisely what is the probative value of reputation testimony in relation to the issue of the prosecutrix's consent. We deem a woman's reputation for unchastity to be of very slight probative value since it is neither relevant to her credibility as a witness,[8] nor material on the issue whether on the occasion of the alleged crime she consented or was forced to submit to an act of sexual intercourse. Indeed, we agree with the court's holding in *Pope v. Superior Court, supra,* 545 P.2d at 953 that the rationale for excluding evidence of specific acts of sexual intercourse applies *with equal force* to the exclusion of reputation testimony. The reputation of a woman for unchastity raises unnecessary collateral issues which are nearly impossible to rebut, it diverts the jury's attention from the principal issues at trial and it results in prejudice to the complaining witness which greatly outweighs its extremely limited probative value. Reputation testimony should not be admitted except in the most unusual cases where the probative value is precisely demonstrated and outweighs the prejudicial effect of the testimony.[9]

■ The prejudicial effect of the proffered testimony of the two defense witnesses pertaining to complainant's reputation clearly outweighed its probative value and was properly excluded. Appellant testified at trial that he had had sexual intercourse with complainant on many occasions in the past (Record at 344) although she was not his girl friend. Appellant testified on this particular occasion he and complainant went to the apartment on Sheridan Street

to engage in sexual intercourse. They did so for a prolonged period of time and then they argued. Shortly thereafter Raymond Foster arrived and the three left the apartment together. When appellant offered complainant a ride home she refused and walked away.[10] Appellant's mother testified that she had seen the two together at her house many times and on one occasion she had observed complainant and her son leaving her house with others in the early hours of the morning (Record at 253–56). Given this testimony bearing on the issue of complainant's consent, we are satisfied that exclusion of reputation testimony here did not impair the defense to the charge of rape.

■ We deem the ultimate outcome in this and other rape cases to turn, as in all other criminal cases, on the jury's evaluation of the witness' credibility in recounting what occurred. This court recently held that rape offenses are not inherently different from other crimes and consequently abrogated the legal requirement of corroboration of the complaining witness' testimony. *Arnold v. United States,* D.C.App., 358 A.2d 335 (1976) (en banc). The court stressed that credibility is particularly crucial "when there is a claim of provoked or consentaneous participation." *Id.* at 344. We are convinced that in cases of rape the credibility of the complaining witness must be weighed by the jury on evidence that is *directly related* to whether complainant consented to a sexual act with the accused and not on evidence of her prior sexual relations with others, or her reputation for unchastity.[11] Here the jury was allowed to

---

8. Several courts have noted that if the reputation of a woman for unchastity was uniformly admitted in a prosecution for rape to impeach her credibility as a witness, this would lead to the unwarranted result that such evidence would be admissible to impeach the veracity of a woman anytime she testified. *See Pope v. Superior Court, supra,* 545 P.2d at 950; *State v. Linton,* 36 Wash.2d 67, 216 P.2d 761 (1950). *Cf. State v. Geer, supra,* 533 P.2d at 391.

9. The court in *Pope v. Superior Court, supra* at 953, would admit reputation testimony "[where] the defendant alleges the prosecutrix

actually consented to an act of prostitution," or when the prosecution offered evidence of the complainant's chastity. *See also State v. Geer, supra,* 533 P.2d at 391 n. 1.

10. Appellant's testimony is apparently inconsistent with codefendant Foster's testimony. *See* note 2 *supra.*

11. As a result of our decision in this case we specifically disapprove Jury Instruction 4.76 Rape-Evidence of Unchastity, Criminal Jury Instructions for the District of Columbia, 2 ed., D.C. Bar Ass'n (1972). The genesis of this jury

consider only evidence that bore directly on the issue of complainant's consent and finding no error in the exclusion of the prof-

fered testimony, the conviction must be and hereby is

*Affirmed.*

instruction is a remark in *Sacks v. United States*, 41 App.D.C. 34 (1913). There, the court of appeals commented gratuitously that evidence of a woman's reputation for chastity and specific acts of sexual intercourse by her with others in the past are admissible in a prosecution for rape when the defense is that the woman consented to the act of intercourse.