Julian KEENE, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–1007.

District of Columbia Court of Appeals.

Argued May 10, 1995.

Decided June 29, 1995.

Veronice A. Holt, Washington, DC, for appellant.

Matthew G. Olsen, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Mark J. Ehlers, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN and TERRY, Associate Judges, and NEWMAN, Senior Judge.

Opinion concurring in part by Associate Judge TERRY at p. 1079.

Concurring opinion by Senior Judge NEWMAN at p. 1080.

FERREN, Associate Judge:

Appellant, Julian Keene, was convicted of one count of sodomy on a minor. D.C.Code § 22–3502 (1989 Repl.). The court sentenced him to three to nine years in prison, with all but fifteen months suspended. The principal issue on appeal is whether the trial court erred in excluding three items of evidence, each of which appellant proffered to substantiate his claim that the complainant had fabricated the charge against him.[1] The ex-

---

[1] Appellant's other claims of error have no merit. Appellant failed to establish a sufficient record for this court to review his claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90

cluded evidence consisted of a tape on which the complainant allegedly fantasized about oral sex, and testimony about two occasions when appellant, a counselor at the group home where the complainant resided, allegedly had disciplined the complainant for engaging in improper sexual behavior. The trial court did allow appellant to reveal to the jury the complainant's antipathy toward him by introducing evidence that appellant had disciplined the complainant on several occasions (without mention of sexual misbehavior). We must conclude, however, that because of the nature of the charge (sodomy), the court abused its discretion in excluding the tape and other proffered evidence of complainant's sexual fantasies and behavior. This non-cumulative evidence was relevant to and probative of appellant's alleged motive to fabricate. Accordingly, we reverse and remand for a new trial.

## I.

### A. *The Government's Evidence*

Appellant was the assistant supervisor of a group home at 1309 Park Road, N.W., operated by the D.C. Department of Human Services. His responsibilities included counseling and disciplining the boys at the home. At trial, there was no dispute that sometime after 10:00 p.m. on September 25, 1991, appellant noticed the complainant, L.K., and another boy, Morris G., "play fighting" in L.K.'s room. Appellant intervened and asked L.K. why he was allowing Morris to hit him rather than defending himself. Appellant took L.K. downstairs, and then outside in front of the house, to counsel him.

According to L.K.'s testimony, when appellant and L.K. went outside, appellant saw Morris G. looking out the window and told Morris to get back inside. Appellant then took L.K. back inside the house and down into the basement "activity room." There was no one else in the basement; appellant closed the door and turned off the lights. Appellant told L.K. to go into the bathroom and followed him there. Once in the bathroom, appellant told L.K. to sit on the toilet. According to L.K., appellant pulled down his own pants, held L.K.'s head back, and attempted to place his penis in L.K.'s mouth. L.K. resisted, but, after several attempts, appellant forced his penis into L.K.'s mouth.

Charles Brown, the other counselor on duty on September 25, testified that he had observed appellant and L.K. talking outside the house and then had seen appellant taking L.K. into the basement. After several minutes, Brown went downstairs to check what was going on. He knocked on the door to the activity room; after several seconds, appellant opened the door. Brown testified that all of the lights in the basement were off except for the bathroom light. Brown also noticed that L.K. was sitting on the toilet and appeared "teary-eyed." When Brown asked what was wrong, appellant replied that L.K. was afraid that appellant was going to slap him. Brown then went back upstairs.

Appellant took L.K. into the activity room and told him to sit on a chair. As L.K. sat on the arm of the chair, appellant again allegedly forced his penis into L.K.'s mouth. Appellant then sent L.K. upstairs.

### B. *The Defense Evidence*

Appellant's theory of defense was that L.K. had fabricated the charges against him. Edwin Jones, who supervised the group home, testified that he had spoken to L.K. on the telephone early on the morning of September 26, 1991—the morning after the alleged incident—and that L.K. had said appellant was picking on him but had not mentioned anything sexual. Jones also testified that appellant had disciplined L.K. on a prior occasion and that L.K. did not have a reputation for being truthful. Two other counselors, Teri Johnson and Rosa Lee Hazelton, also testified that appellant had disciplined

L.Ed.2d 69 (1986). *See, e.g., Jefferson v. United States*, 631 A.2d 13, 15–16 (D.C.1993). Although appellant asserts in the "Questions Presented" section of his brief that the trial court erred in four rulings during the course of trial, he presented little or no argument to support those contentions in the body of his brief. According-

ly, we treat them as abandoned. *See Bardoff v. United States*, 628 A.2d 86, 90 n. 8 (D.C.1993). We also find no error in the trial court's discovery rulings, its jury instructions, the rejection of the motion for recusal, or the denial of appellant's motion for new trial.

L.K. on several occasions. Hazelton additionally testified that L.K. did not have a reputation for truthfulness. Bryant W., a resident of the group home in September 1991, testified that, sometime before September 1991, L.K. had said more than once that he was going to try to get appellant fired.

Appellant testified that he did not have a good relationship with L.K. He further testified that L.K. had allowed the other children in the home to abuse him, and that appellant had counseled L.K. with the objective of modifying his behavior so that he would stand up for himself. Appellant added that L.K. had not responded to this counseling. He further testified that he believed he was not L.K.'s favorite counselor.

Appellant also testified that on the night of September 25, 1991, he went upstairs to check the house. He heard noises coming out of L.K.'s room, and when he looked inside he saw L.K. and Morris G. fighting. Appellant sent Morris to his room and tried to counsel L.K. about permitting Morris to hit him. Some of the other boys interrupted appellant while he was trying to talk to L.K., so he took L.K. downstairs. Mr. Brown, the other counselor on duty, was on the phone downstairs so appellant took L.K. outside. When they got outside, some of the other boys were yelling out the window at them so appellant took L.K. back inside. On the way inside appellant noticed that the lights in the basement were on, so he went downstairs to turn them off. According to appellant, L.K. followed him into the basement.

Appellant tried to talk to L.K. again as they stood in the activity room. L.K. said he had to go to the bathroom. Appellant testified that he stayed in the activity room while L.K. was in the bathroom. Appellant told L.K. to turn off the bathroom light when he came out, and then appellant turned off the light in the activity room. At that moment, Brown came down and asked if everything was all right. Appellant replied that L.K. thought appellant was going to hit him. Appellant then went to check the back door while Brown went into the bathroom. According to appellant, when L.K. came out of the bathroom, appellant tried to talk to him again, but L.K. was uncooperative, so appellant sent him upstairs. After L.K. left, appellant continued to turn off the basement lights and then went back upstairs.

## II.

Before trial began, defense counsel proffered a tape on which, according to counsel, L.K. expressed sexual fantasies about Charles Johnson, one of the counselors at the group home.[2] The tape includes a rap song with explicit references to a woman performing oral sex on a man. After the song, a boy's voice[3] comes on the tape and begins to groan in an explicitly sexual manner. The voice then says "stop Mr. Johnson," begins to repeat some of the lyrics of the song, and then resumes the groaning. Other voices can be heard in the background laughing while this is taking place. Appellant's theory was that the fantasizing on the tape about oral sex and "stopping" Mr. Johnson, a counselor, was relevant to his defense that L.K., obsessed with such sexual fantasy, had fabricated the sodomy incident which he had accused appellant of committing. The trial court listened to the tape and ruled that it was inadmissible because "it has absolutely no relevance to this trial."

After the court's initial decision to exclude the tape, appellant filed the affidavits of two witnesses who had listened to the tape. In both affidavits the witnesses stated that they recognized L.K.'s voice "moaning and calling out the name of Charles Johnson," and that they heard other voices in the background saying "it was too big and to take it out." The court then reiterated its ruling that the tape was not relevant to the question whether L.K. had fabricated the sodomy charge:

> The relationship between having sexual fantasies and making [a] false charge of sexual assault, particularly the relationship between listening to sexually explicit rap music or popular music and making a false claim of sexual assault, is so weak and the

2. L.K. had made the tape with some of the other boys at the group home. Charles Johnson seized it from them.

3. This voice was authenticated after trial as the voice of the complainant, L.K.

potential prejudice in invading the privacy of the complainant by putting the complainant on trial, by putting before the jury and causing the complainant to have to be cross-examined about his or her musical taste and his or her most private thoughts about sexual matters, that is so prejudicial and the probative value is so weak that I'm not going to allow any generalized cross-examination about the music this complainant listens to or any other evidence of the complainant's sexual relationship or sexual fantasies about anyone other than the accused.

Nor would the court allow any extrinsic proof along these lines, unless the defense can proffer or has some type of expert testimony that can show some causal link between an adolescent male's affinity for listening to sexually graphic popular music and a tendency to make false accusations.

■ We disagree with the court's reasoning and conclude that the court abused its discretion in ruling the tape inadmissible. As background for our analysis, we reiterate:

In determining the admissibility of evidence the trial court must take three intellectual steps: (1) the evidence must be competent; (2) it must be relevant; and (3) even though relevant, the evidence should not be admitted if certain countervailing circumstances outweigh probative value, e.g., prejudice, confusion of the issues, cumulative testimony, undue delay.

*Johns v. United States,* 434 A.2d 463, 473 (D.C.1981). The trial court's decision to exclude evidence "is subject to reversal only for abuse of discretion." *Brewer v. United States,* 559 A.2d 317, 320 (D.C.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990).

■ The competence of the tape was not challenged. See *supra* nn. 2 & 3 and accompanying text. Rather, the trial court excluded the tape on the ground that it was not relevant to the issues at trial. The court's ruling was based primarily on this court's decision in *McLean v. United States,* 377 A.2d 74 (D.C.1977), holding that specific prior sexual acts of a rape complainant with someone other than the defendant are not admissible to attack the complainant's credibility

or to show consent on a particular occasion. The trial court repeatedly characterized the tape as "evidence of defendant's prior sexual activity" and "sexual conduct of the complainant with someone other than the accused," and then stated:

As *McLean* makes clear there is no necessary correlation between a complainant's veracity and the complainant's prior sexual conduct with anyone else.

The trial court erred in basing its ruling on *McLean.* We recognized in *McLean* that the outcome in rape cases turns (as it must have in the present case) largely on the jury's assessment of the respective witnesses' credibility. *See id.* at 79. This court therefore reasoned that, because a complainant's prior sexual acts with someone other than the defendant have "no relevance whatsoever to [the complainant's] credibility as a witness," they are inadmissible for the purpose of impeaching a complainant's credibility. *Id.* at 78–79. The court noted, however, that a witness's prior acts may be admissible where those particular acts "bear[ ] directly upon the veracity of the witness in respect to the issues involved in the trial." *Id.* at 77 (*quoting Kitchen v. United States,* 95 U.S.App. D.C. 277, 279, 221 F.2d 832, 834 (1955), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958)).

Here, the taped fantasy was not evidence of entirely unrelated prior sexual conduct by the complaining witness, and thus it does not fall within the scope of the *McLean* prohibition. Rather, the tape shows that the complainant, L.K., actively had been fantasizing about the very type of sexual conduct, oral sex, that he accused appellant of forcing upon him. The relevance of the fantasy is heightened by the fact that its object is another counselor—someone having the same authority relationship to L.K. that appellant had. It appears to us that the evidence L.K. had made a tape with comments about oral sex, including mention of a male counselor at the group home, is relevant—although obviously not conclusive—in answering the question whether L.K. had fabricated the incident with appellant (another male counselor), who on several occasions had disciplined L.K. and whom L.K. had told a friend several times he

would try to get fired. *See Brown v. United States,* 409 A.2d 1093, 1099 (D.C.1979) (evidence is relevant where it "will tend to establish a material proposition in the case").

As to the third "step" for determining admissibility under *Johns,* 434 A.2d at 473, we conclude, as a matter of law, that the probative value of this evidence was not outweighed by its potential for unfairly prejudicing the jury against L.K. 434 A.2d at 473. Although some prejudice is unavoidable given the nature of this evidence, *see Meaders v. United States,* 519 A.2d 1248, 1254 (D.C. 1986), the prejudicial impact of this tape is far less than the prejudice created by an extensive inquiry into a rape victim's sexual history. Furthermore, one of the reasons why the trial court (erroneously) found the tape evidence irrelevant—that "young adolescents have sexual fantasies and are curious about sexual matters as they reach adolescence and puberty"—is actually a persuasive reason why jurors would not be likely to use it in a fashion which would be "unfairly" prejudicial. Finally, the evidence on the tape was not cumulative—indeed it was unique— nor is there any reason to believe that its admission would have caused any undue delay.

We conclude, accordingly, that the evidence on the tape "bears directly upon [L.K.'s] veracity ... in respect to the issues involved in the trial," *Kitchen,* 95 U.S.App. D.C. at 279, 221 F.2d at 834, and that the trial court therefore abused its discretion in ruling the tape inadmissible under *McLean.*[4] *See Johnson v. United States,* 398 A.2d 354, 365 (D.C.1978) (exercise of trial court discretion may be undermined by reliance on improper factor in reaching decision).

**III.**

■ In seeking to demonstrate that L.K. had a motive to fabricate the sodomy charge, the defense also proffered testimony about two occasions on which appellant had "disciplined" or "counseled" L.K. for engaging in sexual misbehavior.[5] While the trial court allowed appellant to show that he had personally disciplined L.K., the court excluded all evidence that the behavior for which appellant had disciplined L.K. was sexual in nature. Appellant contends that the exclusion of this evidence was an abuse of discretion.

The first incident was appellant's discovery of L.K. and two other boys "pulling on one another's penises" in the basement of the group home. Appellant disciplined L.K. and the other boys for "sexually acting out."[6] The second incident occurred in August 1991—the month before L.K. charged that appellant had forced him to engage in oral sodomy—when appellant, L.K., and several other boys were at a park. Appellant proffered that when he and the boys had been urinating behind some bushes, L.K. had stared directly at appellant's penis in an inappropriate manner. Appellant told L.K. to go away and later questioned him about this behavior. Appellant then filed a report with a social worker saying that appellant was concerned about L.K.'s behavior during this incident. It is unclear from the record whether the social worker or anyone else ever brought up this incident with L.K. again.

The trial court explained its rationale for excluding the evidence of L.K.'s sexual behavior on these two occasions:

4. Appellant's counsel attempted, unsuccessfully, to point out to the trial court why *McLean* was inapplicable:

   The Court has like set up a straw dummy for my defense and then attacked it and said that there's a basis for it not being probative. That has never been my defense. The fantasies are a defense and the fantasies are relevant. And there is nothing in *McLean* that suggests that a person who has sexual fantasies or/and delusions—or sexual fantasies about other people which he—and then later makes a claim which—but it's not just another anonymous person, it's another person in the same posi-

tion as Mr. Keene. It is another counselor at the house.... [W]ith respect to the defense of fabrication these are relevant matters.

5. It is not clear from the record exactly what being "disciplined" or "counseled" means. It appears to mean that a boy would receive "a talking to" from one of the counselors about why the particular behavior was wrong, as well as punishment in the form of "restrictions."

6. The date of this incident is not mentioned in the record.

THE COURT: ... [T]he defendant sought to introduce evidence that the complainant and several adolescent males were observed tugging at each other's genitalia at some point inside the basement of the group home....

The defendant also sought to introduce evidence that while the defendant and apparently several other individuals were urinating in a park behind a bush in the complainant's presence, that the complainant looked or stared at the defendant's penis in a way which in the defendant's thought was inappropriate and the defendant[ ] proffered that the defendant reported these incidents to appropriate authority.

While the Court allowed the defendant to establish that Mr. Keene had counseled or disciplined the complainant for actions which the complainant believed were improper because such incident could have provided a motive for the complainant to fabricate, the Court did not allow the defense to identify the nature of the aforementioned incident.

First, the Court did not and still does not believe that the mere fact of a young man watching another person urinate without doing or saying anything more particularly where the defendant chose to urinate in a public place behind a bush in the complainant's presence has any probative force on the issue of whether or not the complainant would fabricate a charge of sodomy.

With respect to the incident in the basement, again the Court does not believe the mere fact that the complainant and other adolescent males reaching the age of puberty would engage in this type of conduct would tend to make it more probable that the complainant would fabricate a charge of sodomy. There is simply no evidence to

suggest any link between such behavior and making false reports about sexual offenses.

Certainly the probative value of this evidence if there be any on the issue of explicating the complainant's motivation for making the complaint is so weak if not nonexistent on this record and the resultant tendency with the evidence to embarrass and humiliate the complainant would cause the jury to resort to mere speculation is so great that the court reaffirms its holding that the evidence should have been excluded.

We agree with appellant that the trial court abused its discretion in excluding the proffered testimony about these two incidents. The court appears to have considered and rejected two theories of admissibility.[7] First, the court assumed, incorrectly, that the evidence had been proffered to show that L.K.'s involvement in sexual misbehavior made it more likely that he had fabricated the sodomy charge. The court then found that L.K.'s sexual misbehavior, standing alone, was not relevant to fabrication. If the defense had proffered the evidence under this first theory, the trial court probably would not have abused its discretion in excluding it as irrelevant. *See McLean*, 377 A.2d at 78 (complainant's prior sexual acts not relevant to credibility).

Defense counsel made clear, however, that this first theory was not the theory of the proffer. The defense had not proffered that L.K.'s involvement in particular sexual behavior, as such, made it more likely that he had fabricated the charge against appellant; rather, the defense contended that the fact that appellant had disciplined L.K. for engaging in sexual misbehavior provided L.K. with a powerful motive to retaliate against appellant by accusing appellant himself of sexual misbehavior.[8] The trial court, however, also rejected this second theory of admissibility

---

7. There was no question about the competence of this evidence. *See Johns*, 434 A.2d at 473. Defense counsel proffered that appellant himself would testify about both incidents.

8.   [DEFENSE COUNSEL]: When we limited what would come in and what couldn't, in discovery it was limited to specific discipline by my client for sexually acting out and that's why I was making this very limited issue of

*there are two incidents in which my client did discipline him for these matters and I believe are a basis of his bias.*
THE COURT: You can explore it and you have already with respect to discipline between your client and the complainant; however, with respect to sexually acting out, I have already ruled that the prejudicial impact is so great

on the ground that, even if the evidence was relevant to L.K.'s motive to fabricate, its potential to create unfair prejudice outweighed its probative value.

We cannot agree that the potential unfair prejudice from this evidence outweighed its probative value. The nature of this case was such that the outcome depended entirely on whether the jury believed appellant or L.K. *See McLean,* 377 A.2d at 79 ("the ultimate outcome in . . . rape cases . . . as in all other criminal cases [turns] on the jury's evaluation of the witness' credibility in recounting what occurred."). The theory of appellant's defense was that L.K. had fabricated the charge against him. The excluded evidence demonstrated the existence of a powerful motive to fabricate a charge of sexual abuse. *Compare State v. Niles,* 108 Or.App. 735, 817 P.2d 293, 295–96 (1991) (affirming exclusion of evidence of complainant's prior sexual conduct because it "did not make it more probable that she was motivated to fabricate, or that she was biased against defendant."). The evidence that appellant had disciplined L.K. for sexual misbehavior was not cumulative of the other discipline evidence because the sexual dimension suggested an additional reason for fabrication that was not demonstrated by any of the other evidence that L.K. and appellant had not experienced a good relationship.[9] While it is inevitable that evidence of this nature will have some prejudicial effect on the jury, *see Roundtree v. United States,* 581 A.2d 315, 324 (D.C.1990),

this evidence had probative value unlike any other evidence available to the jury for answering the central question whether appellant or L.K. was telling the truth.[10] Accordingly, the trial court abused its discretion in excluding all evidence of the fact that, on two occasions, appellant had disciplined L.K. for engaging in sexual misbehavior. *See Lawrence v. United States,* 482 A.2d 374, 377 (D.C.1984) (concluding there was reversible error where "the trial court's action may have kept from the jury relevant and important facts bearing on the trustworthiness of crucial testimony") (citations and internal quotations omitted).

**IV.**

■ An abuse of discretion, by definition, is an error of a magnitude requiring reversal. *See Johnson,* 398 A.2d at 366–68. As indicated from our discussion, in a one-on-one swearing contest where the defense is precluded from presenting non-cumulative evidence that is probative of its theory of the case—that the complaining witness had a motive to fabricate—we must say "the impact of that error requires reversal." *Id.* at 367. Accordingly, we reverse and remand for a new trial.

*So Ordered.*

TERRY, Associate Judge, concurring in part:

I agree that the evidence of the prior incidents in which appellant had "counseled"

that the probative value is so weak that I'm not going to let you do it.
[DEFENSE COUNSEL]: Now, on the issue of the fabrication with respect to my client, there is an incident that involves [L.K.] and my client with respect to sexually acting out. *I cannot believe that it is irrelevant to the allegations.*
THE COURT: I don't know what you're talking about. There's an incident between your client—There is—
[DEFENSE COUNSEL]: There is an incident of some inappropriate behavior of a *sexual* nature by [L.K.] that my client subsequently disciplined him for.
THE COURT: I have already said that stays out of the case, Miss [Defense Counsel], because there is no connection that can reasonably be drawn between—I don't think we had expert testimony that because a young man sexually acted out in certain ways that initially tried to get before the jury, it is more likely

that he would have fabricated this incident of sodomy. There is no probative linkage between those two things. The fact that he may have a bias against him because he disciplined him is fine and I'll let you explore it.
[DEFENSE COUNSEL]: *But he disciplined him specifically with respect to sexual conduct.*
THE COURT: I have already ruled on it.
(emphasis added).

9. Appellant testified that he did not have a good relationship with L.K., and three other counselors testified that appellant had disciplined L.K. on several occasions. Bryant W. testified that L.K. had said he was "going to try to get [appellant] fired."

10. Nor was the probative value of this evidence outweighed by any other "countervailing circumstances," such as a likelihood of confusing the jury or creating undue delay. *See Johns,* 434 A.2d at 473.

or "disciplined" L.K. was erroneously excluded, and that appellant's conviction must be reversed because of this error. Accordingly, I join in parts I, III, and IV of Judge Ferren's opinion for the court. I therefore do not consider the tape recording, which to me presents a much closer question of admissibility; consequently, I do not join in part II of Judge Ferren's opinion.

I add these few cautionary words to emphasize that our decision today should not be read too broadly, for it is in no way a retreat from the holding of *McLean v. United States*, 377 A.2d 74 (D.C.1977), and its progeny.[1] *McLean* firmly established in this jurisdiction the principle that, in the trial of a case involving a sex crime,[2] specific prior sexual acts of the complainant "with someone other than the defendant are not admissible to attack the complainant's credibility or to show consent on a particular occasion." *Ante* at 1076. As we said in *Brewer, supra* note 1, "[t]he time is long past when a defendant charged with [a sex offense] could put his victim on trial." 559 A.2d at 320. The instant case, however, presents us with one of those rare exceptions recognized in *McLean. See* 377 A.2d at 78 n. 6 (discussing "unusual circumstances").

Because the two prior incidents in this case involved sexual activity, *McLean* made them inadmissible unless the defense could show "unusual circumstances" that made them admissible on other grounds. I am satisfied that this strict standard was met here, and that the defense adequately established "that the fact that appellant had disciplined L.K. *for engaging in sexual misbehavior* provided L.K. with a powerful motive to retaliate against appellant *by accusing appellant himself of sexual misbehavior.*" *Ante* at 1078 (emphasis added). In other words, what put the evidence on the track toward admissibility was the fact that appellant had disciplined L.K., which gave L.K. a motive to retaliate. What ultimately made it admissible was the sexual connection between the prior incidents and the events on which the pending charge was based. The sexual nature of the prior incidents strongly suggested a "tit-for-tat" motive on the part of L.K. to fabricate testimony *of a sexual nature,* as Judge Ferren explains more fully, *ante* at 1079. On this basis I agree that the trial court abused its discretion and that the conviction must therefore be reversed.

NEWMAN, Senior Judge, concurring:

I join fully the court's opinion. However, in view of the concurrence of my brother Terry, I write separately to emphasize that the *Kitchen*[1] exception to the *McLean*[2] rule remains *fully* alive and viable.

The rationale of the *McLean* prohibition is that "[g]enerally the law disfavors the admission of evidence of a person's character in order to prove conduct in conformity with that character...." *Id.* at 77. We thus rejected evidence of prior sexual conduct of the prosecutrix, the relevance of which is based on a "propensity" rationale, *i.e.,* evidence whose probative value depends on the human tendency to repeat. We recognized, however, among the exceptions to these general prohibitions: (1) evidence of bad reputation for truth and veracity, (2) certain prior convictions, (3) so-called *Drew*[3] evidence, and (4) as is the case here, where the alleged prior misconduct "bears directly upon the veracity of the witness in respect to the issues involved in the trial." *Id.* at 77 (quoting *Kitchen v. United States, supra,* 95 U.S.App.D.C. at 279, 221 F.2d at 834). We thus recognized that where the relevance and probative value of the evidence does not de-

1. *Brewer v. United States*, 559 A.2d 317 (D.C. 1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990); *Meaders v. United States*, 519 A.2d 1248 (D.C.1986); *see also* Fed.R.Evid. 412.

2. *McLean* involved a charge of rape, but there is no sound reason to restrict its holding to rape cases. *Its* rationale applies equally well in cases involving other sex offenses, such as sodomy or sexual abuse of a minor.

1. *Kitchen v. United States*, 95 U.S.App.D.C. 277, 221 F.2d 832 (D.C.), *cert. denied*, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958).

2. *McLean v. United States*, 377 A.2d 74 (D.C. 1977).

3. *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); *compare* Fed.R.Evid. 404(b).

pend upon a "propensity" rationale, the *Mc-Lean* prohibition is inapposite. This is so whether the prior misconduct is of a sexual nature or otherwise (as was the case in *Kitchen*).

How frequently the *Kitchen* exception will present itself in the trial court (and thus whether it will be "unusual") is something I lack the necessary data to ascertain. On this note, I reiterate, I fully join the court's opinion.